MICHAEL NUTE et al., Respondents, v. THE HARTFORD FIRE INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, November 7, 1904.

1. **INSURANCE: Evidence: Jury.** Where the insurer issues and delivers his. policy and the insured pays the premium and there is a loss, a case is made for the jury.

2. **———: Representations of the Assured: Declarations: Instructions.** Certain instructions relating to the representations of the assured and actions and declarations of the insurer's agent while writing a policy, are approved.

3. **———: Acts of Insurer's Agent: Estoppel.** Certain acts of the insurer's agent are considered and held to work an estoppel *in pais*.

4. **———: ———: Under the evidence certain indorsements and false representations contained in the recitals of the policy. and other papers are imputed to the insurer and not to the insured.

5. **———: Title to Property: Instructions: Equitable and Legal Estate.** Under the facts an instruction that the insured prop-

Nute v. Insurance Co.

erty belonged in equal parts to four persons is held improper, since two of the four only held one-half the naked legal title and the other two held one-half of the legal title and the whole equitable estate.

6. ———: **False Swearing: Instructions.** Certain instructions set out in the opinion as to the effect of false swearing in proofs of loss are approved.

Appeal from Macon Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

Affirmed.

*Ben Eli Guthrie* and *Barger & Hicks* for appellant.

(1) The facts did render the policy void and released the defendant from further liability thereunder, but also forfeited the claim of John, Michael and Annie to any part of the $1,400 on account of the loss of the barn, has frequently been held and is the well-settled law. Claflin v. Ins. Co. (U. S. S. C.), 13 Ins. Law Jour. 177, 185; 4 Joyce on Insurance, secs. 3339 and 3342; Ins. Co. v. Meides (U. S.), 14 Wall. 375; Gerhouser v. Ins. Co., 6 Nev. 15; Ins. Co. v. Newday, 5 Coldw. (Tenn.), 543; Ins. Co. v. Starr, 71 Tex. 733, 12 S. W. 45; Ins. Co. v. Vaughn, 88 Va. 832, 14 S. E. 508; Sleeper v. Ins. Co., 5 Ins. Law Jour. 538, 540, 545; Sibley v. Ins. Co. (U. S. S. C.), 8 Ins. Law Jour. 461, 462; Dohmen Co. v. Ins. Co. (Wis.), 27 Ins. Law Jour. 357-367; West v. Assur. Co. (U. S. S. C.), 25 Ins. Law Jour. 689. (2) The undisputed testimony also showed that after the policy was issued and without notice to or the knowledge or consent of the defendant, a change took place in the title of the property described in the policy sued on by reason of the deed made and delivered by Annie E. Nute, June 4, 1900, conveying her undivided one-fourth interest to John W. and Michael Nute. That such change in the title rendered the policy

void is held in each of the following authorities: Drehner v. Ins. Co., 18 Mo. 128; Carr v. Ins. Co., 4 Mo. App. 424; Oldham v. Ins. Co. (Ia.), 57 N. W. 861; Dix v. Ins. Co., 22 Ill. 272; Hathaway v. Ins. Co., 20 N. W. 164; Keeler v. Ins. Co., 16 Wis. 523; Ins. Co. v. Ross, 23 Ind. 180; Wood v. Ins. Co., 31 Vt. 552; Buckley v. Garrett, 47 Pa. 204; Ins. Co. v. Becker, 10 Mich. 279; Overton v. Ins. Co., 79 Mo. App. 1; Rayner v. Ins. Co., 70 Mo. App. 47; Ins. Co. v. Gibbons, 43 Kan. 15; Assur. Co. v. Bldg. Assn. (U. S. S. C.), 22 Sup. Ct. Rep. 133, 31 Ins. Law Jour. 97; Quinlan v. Ins. Co., 133 N. Y. 356, 21 Ins. Law Jour. 650; Walsh v. Ins. Co., 73 N. Y. 5; Hankins v. Ins. Co., 70 Wis. 1, 35 N. W. 34; Gould v. Ins. Co. (Mich.), 21 Ins. Law Jour. 328; Enos v. Ins. Co. (Cal.), 15 Ins. Law Jour. 138; Kyte v. Assur. Co., 144 Mass. 43, 16 Ins. Law Jour. 330; Ruthven v. Ins. Co., 41 N. W. 373; Kirkman v. Ins. Co. (Ia.), 57 N. W. 952; Knudson v. Ins. Co., 71 Wis. 198; Moore v. Ins. Co., 36 N. E. 191. On June 11, 1900, at the instance of the plaintiffs, the indorsement was put on the policy. (3) After the indorsement was put on the policy it was again delivered to the plaintiffs, and was accepted and retained by them. By the acceptance and retention thereof without objection they acquiesced in its correctness, as was held by the court of appeals in Overton v. Ins. Co., 79 Mo. App. 1. (4) Besides, there is not a syllable in the testimony that John or Michael, on June 11, 1900, said one word to Mr. Hale in regard to the ownership of the personalty in the house. Mers v. Ins. Co., 68 Mo. 127; Ins. Co. v. Wagner (Tex.), 26 Ins. Law Jour. 261. (5) The court erred in admitting the testimony of each of the plaintiffs as to the value of the personalty in the house. (6) The court erred in giving to the jury its first instruction on behalf of the plaintiffs. (7) The verdict is directly opposed to instructions numbered 1, 2 and 3, given on behalf of defendant. (8) The court erred in refusing to give instruction numbered four, as asked by defend-

ant, and in modifying and giving said instruction, as modified. (9) The verdict is contrary to the fifth instruction given by the court in behalf of the defendant. (10) Because the undisputed evidence showed that under the law as applied to such evidence, the plaintiffs were not entitled to recover, the court should have given the peremptory instruction requested by defendant at the close of the evidence and sustained the demurrer to the evidence.

*Dysart & Mitchell* for respondents.

(1) There was no written application in this case. The plaintiffs were solicited by C. F. Hale, the agent of the defendant company to insure with said company. Said Hale was what defendant calls their recording agent at Bevier, Missouri, and had power to countersign, issue and deliver policies, receive premiums and stood in the place of the company in making this contract of insurance. The evidence does not leave room for a doubt that plaintiffs frankly, fully and truthfully stated the condition of the title to the premises to the company and afterward diligently kept the company informed as to the state of the title. Parsons v. Ins. Co., 132 Mo. 590; Laundry Co. v. Ins. Co., 151 Mo. 90; O'Brien v. Ins. Co., 95 Mo. App 301; Ross-Langford v. Ins. Co., 97 Mo. App. 79; Wolf v. Ins. Co., 86 Mo. 580; Ownsby v. Ins. Co., 98 Mo. App. 371; Montgomery v. Ins. Co., 80 Mo. App. 500; Rissler v. Ins. Co., 150 Mo. 366; Thompson v. Ins. Co., 169 Mo. 25; DeSoto v. Ins. Co., 74 S. W. 1; Woodsmall v. Ins. Co., 99 Mo. App. 472, 73 S. W. 1133; Brennen v. Ins. Co., 99 Mo. App. 718. (2) When the recording agent, Hale, and the company were informed of the quitclaim deed from Annie E. Nute to plaintiffs, and of the suit against Wm. Nute for specific performance and to quiet the title, unless it was the intention of the company to consent thereto and continue the insurance, the company should

have cancelled the policy and returned the unearned premium. Millis v. Ins. Co., 95 Mo. App. 211; Thompson v. Ins. Co., 169 Mo. 25, 26. (3) There was no evidence to support the defense set up in the answer and none to justify the instructions given for defendant. The verdict is the only one that could have been rendered on the uncontradicted evidence and the judgment ought to be affirmed. Earney v. Modern Woodmen, 79 Mo. App. 385. (4) The objection of defendant to instruction numbered 1 and 2 given for plaintiffs is not well taken. This court passed upon and approved an instruction in Ross-Langford v. Insurance Company, 97 Mo. App. 79, l. c. 82, almost exactly like the instructions here complained of. Even if the instructions given for plaintiffs in this case were wrong, which plaintiffs deny, still the verdict of the jury and judgment of the court were unquestionably on the uncontradicted evidence for the right party and ought to be affirmed. R. S. 1899, secs. 659 and 865; Fitzgerald v. Barker, 96 Mo. 666; Fox v. Winders, 127 Mo. 514; Baustian v. Young, 152 Mo. 325; Sherwood v. Railway, 132 Mo. 339; Noble v. Blount, 77 Mo. 239; Quinlan v. Kansas City, — Mo. —.

SMITH, P. J.—This is an action which was brought on a fire insurance policy issued by the defendant. The salient facts which are disclosed by the evidence may be marshalled in about this way: The plaintiffs in the year 1884 purchased a certain tract of land near Bevier in Macon county, this State. They paid the entire purchase price to their vendor and under a contract with their mother, Louisa Nute, that she would convey said land to them when requested so to do, they caused their vendor to execute a deed conveying the legal title to her; that she and her daughter, Anna Nute—plaintiffs' sister—resided with plaintiffs on it until the mother's death in 1895, and that the

plaintiffs and their said sister after such death of their mother continued to reside on it for many years; that on June 5, 1899, the defendant issued a policy of fire insurance whereby it insured the *heirs of Louisa Nute*, deceased, for three years against all damage by fire on a certain dwelling house and the furniture therein, and on a private barn and contents, all located on the tract of land already referred to; that said Louisa Nute, mother of plaintiffs, left as children surviving her besides the plaintiffs and said Anna Nute, one William Nute, another son; that C. F. Hale, a policy soliciting and writing agent of defendant at Bevier solicted the said insurance; that at the time the policy was issued the plaintiffs told him that the land upon which the buildings stood which were the subject of the proposed insurance had been purchased with money which they had earned in digging coal and that no part of the purchase price paid for it had been furnished by anyone else and as the business of mining was a hazardous one they chose to place the title in the name of their mother, Louisa Nute, with the express understanding that she would later on by deed or will convey it to them; that not only did said real estate belong to them, but all of said personal property as well—it, too, having been purchased by them with their own money; that plaintiffs informed the said agent that their said brother, William, and their sister, Anna, had no interest in any part of said property; that the mother of plaintiffs had died without conveying said land by will or deed to them; that thereupon the defendant's agent informed the plaintiffs, who were illiterate (one of them being unable to write his name), and ignorant as to insurance matters, that it was necessary to write the insurance solicited in the name of the heirs of Louisa Nute, deceased; that the defendant's agent was further told by plaintiffs that their said brother, William Nute, and sister, Anna Nute, had promised by deed to quitclaim their title therein to them. It further appears from the evi-

dence that defendant's agent was personally well ac-
quainted with the said Louisa Nute in her lifetime as
well as with her four children already named and the
relation of all of them to the property; that afterwards,
during the life period of the policy, the barn covered
by it was struck by lightning and thereby set on fire,
which together with its contents was thereby consumed;
that the defendant's adjuster and soliciting agent ad-
justed the plaintiffs' loss; that plaintiffs made a state-
ment of facts to said adjuster and soliciting agent
touching the said real estate, the manner in which the
same had been purchased and held by their mother,
Louis Nute, in substantially the same way they had
made them to defendant's agent when he issued the
policy; that upon these facts the defendant's adjuster
and soliciting agent prepared on their own blanks and
in their own way receipts, vouchers and proofs of loss
and then paid the plaintiffs the amount of such loss;
that further on during the life period of the policy the
said Ann Nute executed to plaintiffs a quitclaim deed
to the said real estate but William Nute declining to
make such deed, plaintiffs brought an action against
him in the proper court for specific performance and
to quiet title; that still later on the plaintiffs went to
the defendant's soliciting agent and informed him of
the facts just stated—producing to him the said policy
and requesting the proper indorsement be made there-
on; that thereupon the said soliciting agent received
said policy and told the plaintiffs that he would ex-
amine the records and then make the proper indorse-
ments thereon; that some time afterwards he returned
to plaintiffs the said policy in a sealed envelope; that
about two months after this the plaintiffs' house was
wholly consumed by fire; that when the defendant's ad-
juster and policy writing agent visited the scene of the
fire to adjust the loss the plaintiffs, in the presence of
these agents, opened the sealed envelope containing the
policy when they for the first time discovered that the

defendant's policy writing agent had while the policy was in his possession made an indorsement thereon to the following effect: "That it is agreed that the estate has been settled and that the property insured has been set aside by the court to John and Michael Nute and loss, if any, is hereby payable to them."

The affidavit in respect to the loss of the barn which was made by the plaintiffs and their sister Anna stated that the said barn and contents so burned be-longed to them as the heirs of Louisa Nute, deceased, and that they were the owners thereof in fee simple.

The integrity of the fire was not put in issue by the pleadings. The defendant denied all liability and pleaded three several defenses:

1. That the indorsement made on the policy by the defendant's agent already quoted was a warranty of material facts contained in the policy which were untrue—specifying in what—and by reason of which the policy became null and void.

2. That by the terms of said policy it was stipulated that it should be void if any change took place in the interest, title or provisions of the subject of the insurance by the voluntary act of the assured unless indorsed on the policy, and that said Anna Nute, without notice to defendant or consent thereto indorsed on said policy, had conveyed her interest in the subject of the insurance to plaintiffs, the effect of which was to render the said policy void.

3. That the policy contained a warranty in substance that said policy should be void if the insured had concealed or misrepresented in writing or otherwise any material fact or circumstance concerning the insurance or the subject thereof, or in case of any fraud or false swearing by the insured touching any matter relating to the insurance, or the subject thereof, whether before or after a loss; and that plaintiffs had falsely and fraudulently made an affidavit as and for a proof of loss in which they had sworn that the sole title to

the subject of said insurance was in plaintiffs and said Anna Nute as the only heirs of Louisa Nute, deceased, when they knew that their brother, William Nute, had an undivided one-fourth interest therein, and that by reason of said false swearing said policy became void, etc.

The answer also pleaded a counterclaim to the effect that plaintiffs by the false statements contained in their affidavit made misrepresentations in writing of material facts and circumstances concerning the subject of the insurance and constituted false swearing and fraud within the meaning of the policy, whereby defendant was deceived and plaintiffs procured the $1,400, which amount defendant was entitled to recover back, etc.

The plaintiffs' reply was in substance that at the time of the issue of the policy plaintiffs furnished to defendant's soliciting agent full and accurate information as to the true situation of the title of said real estate and the said agent then assured plaintiffs that he would himself examine the records and attach to the policy the proper writing and statement, and then and there took the policy for these plaintiffs, and after examining the record, and with full information given by these plaintiffs, attached to the said policy the paper dated Bevier, Missouri, June 11, 1900, and signed by the local agent, as is set out in the second paragraph of the defendant's answer, and after attaching said paper to the said policy the said agent returned the said policy in a sealed envelope to Michael Nute, plaintiff herein; that the said Michael Nute could neither read nor write, which fact was known to the said agent; that said policy remained sealed as delivered by the said agent, until after the fire and loss, as set out in plaintiffs' petition; that these plaintiffs relied wholly upon the agent to make the proper indorsement upon the said policy, as he promised to do; and

on the said day of June, 1900, or about that time, these plaintiffs fully informed the said agent as to the deed of quitclaim made by Anna Nute to these plaintiffs, and further fully informed the said agent again of the state of the title to the said real estate and of the pretended claim of the said William Nute which was fully known by the said agent who made the indorsement after having all of the information from these plaintiffs, and after having himself examined the records of the county of Macon as to the state of the title to the said real estate.

Further replying, plaintiffs say that they did, on or about the 17th day of July, 1899, make an affidavit as to the loss of a barn and the contents therein by fire; that the same was supposed to be struck by lightning and burned up, and therein did represent themselves to be the heirs, and all and each of them heirs of Louisa Nute; that they then and there made a full and complete representation of all the facts to the adjuster of the defendant company, and that, too, in the presence of the said agent; that the said agent then and there knew who the heirs of the said Louisa Nute were, and had for years been intimately acquainted with the family and each member of the family of the said Louisa Nute, deceased; that these plaintiffs made no misrepresentation of any kind to the said adjuster or the said agent; that the receipt given for the said loss was prepared by the defendant and its agents with a full statement of all the facts made by these plaintiffs and without any concealment of any kind; that the said loss was claimed in good faith by these plaintiffs and was and is their just due.

And further replying, these plaintiffs say that the said agent had at all times during the life of the said policy full and accurate information of the title to the said premises on which the buildings destroyed and herein sued for were situate; that the said agent had for fifteen years and more been intimately acquainted

with the family of the said Louisa Nute, and with each. member thereof, and was fully informed by these plaintiffs that they had purchased the said property and paid the purchase price out of their own earnings and had the title placed in their mother with an express agreement with her to reconvey the same by deed, or to will it to these plaintiffs at her death. The said agent was further fully informed of the fact of the pretended claim of William Nute to an interest in said real estate; that the said agent and the said William Nute during the whole life of said policy, and for many years prior to its issuance, lived together in the same village of Bevier, Missouri, and said agent was further informed by these plaintiffs that they would have to commence a proceeding against William Nute in the circuit court of Macon county for a specific performance against him on the contract made as aforesaid with their mother, Louisa Nute, when the title was placed in her and to quiet title to the said premises as against the said William Nute; that the said agent with a full knowledge of all of these facts, solicited the insurance at the outset, and with full information of all the facts made the said indorsement dated June 11, 1900, and attached the same to the said policy; that the said defendant and its agent ordered all the papers, including the application, the policy and indorsements thereon, and prepared the same themselves, and plaintiffs say that the defendant thereby waived any right to claim and is estopped to claim any defect in the title of these plaintiffs to the said premises.

At the conclusion of the evidence the defendant interposed a demurrer thereto which was by the court denied.

The evidence clearly shows that the defendant issued and delivered to plaintiff the policy sued on; that plaintiffs paid the premium, and that there was a loss. This was a sufficient showing to take the case to the jury.

The court at the request of the plaintiffs instructed the jury as follows: That "if it believed from the evidence that Mr. Hale was the solicitor and recording agent of the defendant, and that at the time the plaintiffs applied for the policy through Mr. Hale they correctly and truly represented to Mr. Hale the title and ownership of the said property, then the plaintiffs are not precluded from a recovery in this case, although it may further believe that the state of the title was not correctly stated in the policy and sued on.

"And if it further believed from the evidence that afterwards the terms of said policy were changed, making the said policy payable to the plaintiffs, and that prior to the said change the condition of the title was fully and truly explained to Mr. Hale, and that the policy was turned over to Mr. Hale to have the change made, and that the defendant, by itself or through its agent, Mr. Hale, with a full knowledge of all the facts regarding the title, executed and attached to the policy the paper read in evidence, dated on June 11, 1900, and attached to the policy, then the plaintiffs are not precluded from a recovery upon the policy by reason of any false statement, if any, contained in said attached writing, and the plaintiffs are entitled to recover on the said policy for the amount you may find from the evidence to be due, if any, and claimed not exceeding $1,600 with six per cent interest from the date of the filing of this suit, to-wit: August 5, 1902."

We can not approve the defendant's criticism of the plaintiffs' instruction. It—the instruction—embodies a correct expression of the law. The acts and declarations of the defendant's soliciting agent while writing the policy were those of the defendant. [Ins. Co. v. Wilkerson, 13 Wall. 222; Combs v. Ins. Co., 43 Mo. 148; James v. Ins. Co., 148 Mo. 1; Laundry Co. v. Ins. Co., 151 Mo. 90; Bush v. Ins. Co., 85 Mo. App. 155.]

It appears from the undisputed evidence that the

plaintiffs at the time they applied for the policy fully and truthfully related to defendant's agent every fact regarding the title and ownership of the property to be covered by the policy; that he was informed by plaintiffs that they were the only owners of such property; that they had acquired it by purchase with their own means and had put the legal title in Louisa Nute, their mother, under a contract that she should later on convey to them; that their sister Anna and brother William had no interest therein. Now if the defendant with this knowledge chose in writing the policy to misdescribe the condition of the title they ought not after loss to be allowed to escape responsibility on the ground that the title was not correctly described in the policy. If, as the undisputed evidence further shows, the plaintiffs went to defendant's agent and informed him that Anna Nute, their sister, had executed to them a quitclaim deed for her interest in the property covered by the policy, and that their brother, William Nute, had failed to do so but that they had then pending a suit for specific performance and to quiet title and delivered to said agent the policy and requested that the proper indorsement be made thereon in respect to the condition of the title, and that with full knowledge of all the facts regarding the title he made the indorsement on the policy referred to in the pleadings, and therein made one or more false statements of fact, the plaintiffs ought not to be precluded. It seems that in such case the doctrine of *estoppel in pais* can with much propriety be invoked and applied. The unsuspecting and illiterate plaintiffs reposed in defendant's agent every confidence. He wrote the policy, the indorsement thereon and proofs of loss, and in doing so he used terms of his own choosing. If he made any false statement of fact therein it was that of the defendant rather than the plaintiffs. [LaForce v. Ins. Co., 43 Mo. App. l. c. 530.] The contract was drawn by the defendant. It made its own terms and imposed its own conditions.

Such a contract can never be tolerated as a snare to the unwary and ignorant. Under the conditions disclosed by the record now before us, to allow the defendant to defeat plaintiffs' action on the ground that the said indorsement contained a false recital of facts as to the status of the title would be a reproach to the enlightened jurisdiction of this state.

After defendant's agent was notified of the fact that Anna Nute had executed a quitclaim deed to the property and of the suit against William Nute for specific performance and to quiet title, unless it was the intention of the defendant to continue the risk it should have cancelled the policy and returned the unearned premium. The defendant, by its indorsement on the policy at such time, led the plaintiffs to believe that it acquiesced in their course of action, and thereafter to claim a forfeiture would be inconsistent with fair and honest dealing. [Millis v. Ins. Co., 95 Mo. App. 211; Thompson v. Ins. Co., 169 Mo. 12.] It seems to us that much of the reasoning and many of the authorities cited in Ross-Langford v. Ins. Co., 97 Mo. App. 79, uphold the theory of the plaintiffs' instructions. Most obviously, if the policy or the indorsement thereon or the proofs of loss, receipt or other paper recited false recitals of fact material to the risk, the presence of such recitals therein must be imputed to the defendant and not to plaintiffs.

The defendant complains of the action of the court in refusing its fourth instruction which declared as a matter of law that at the time the policy was issued the property covered by it belonged in equal parts to John W. Nute, Michael Nute, William Nute and Anna Nute, etc. This instruction was properly refused because the evidence shows most clearly that the legal title was in Louisa Nute, and at her death passed to her four children just named, but that she had only the legal title while the equitable title was in the plaintiffs. At her death the title in fee to one-half of the property

vested in plaintiffs. They had also the equitable title to the other half, their brother William and sister Anna holding the legal title thereto in trust for them—plaintiffs—and therefore it can not be said as a matter of law that said property belonged in equal parts to the plaintiffs and their brother William and sister Anna.

The court gave for the defendant three other instructions which told the jury that if it believed from the evidence:

1. "That the plaintiffs knowingly and intentionally made and delivered to the defendant an affidavit in proof of loss, therein stating in substance that John W. Nute and Anna Nute and Michael Nute were the owners of the barn destroyed by fire upon July 6, 1899, and that no other person had any interest therein, and you further find and believe from the evidence that one William Nute was their brother and an heir of Louisa Nute, deceased, and that he had an undivided one-fourth interest in said barn when the same was destroyed by fire, then it is instructed that such affidavit would constitute fraud or false swearing within the meaning of said policy, and would render the policy void, and its verdict in such case should be for the defendant."

2. "If it further find from the evidence that the plaintiffs and Anna Nute, in order to procure payment of $1,400 for the loss of the barn and contents, indorsed the draft of the defendant company, dated September 13, 1899, for $1,400, which draft recited on its face that they were all the heirs of Louisa Nute, deceased, and it further finds from the evidence that they were not all such heirs, and that such indorsement was knowingly and intentionally made in order to obtain said $1,400, then you are instructed that said indorsement of said draft and the procurement of the $1,400 thereon was fraud within the meaning of the terms of the policy, and rendered the entire policy void. . . ."

3. "It is further instructed that the defendant

seeks to recover back in this action by way of counterclaim the $1,400 paid by it to the plaintiffs and Anna Nute on account of loss by fire of the barn and contents in 1899, and on the theory that said sum was procured by plaintiffs and Anna Nute by means of fraud and false swearing on the part of plaintiffs and Anna Nute and on this subject it is instructed that if it finds and believes from the evidence that said sum was procured by the plaintiffs and Anna Nute from the defendant by means of fraud and false swearing as and concerning which you have in these instructions elsewhere been fully informed, then its verdict should be for the defendant for the sum of $1,400.  . . ."

After looking at the instructions in their entirety the conclusion is irresistible that they submitted to the jury for its guidance a full and complete expression of the whole law applicable to the undisputed facts of the case.

As we have been unable to discover that any error prejudicial to defendant on the merits was committed by the court during the progress of the trial, it becomes our duty under the statute—section 865—to affirm the judgment, which is accordingly ordered.  All concur.