J. H. FULBRIGHT v. PHOENIX INSURANCE COMPANY OF HARTFORD,. CONNECTICUT, Appellant.—44 S. W. (2d) 115.

Division Two, December 1, 1931.

*Williams, Henson & Stone* for appellant.

*Durst & Durst* and *James L. Hornbostel* for respondent.

212

COOLEY, C.—Appeal by defendant from judgment of the Circuit Court of Greene County in favor of plaintiff. The appeal was taken to the Springfield Court of Appeals, where the judgment of the circuit court was affirmed, but by a divided court. Upon request of the dissenting judge the cause was certified to this court. The majority opinion of the Springfield Court of Appeals, and the dissenting opinion filed in that court, are reported in 30 S. W. (2d) 870. From the former we quote the following statement of facts:

"This is a suit based on a fire insurance policy issued by defendant to plaintiff covering loss by fire on a house, barn, and other buildings located on a farm. The petition was in conventional form, setting forth that the policy was issued February 20, 1928, insuring plaintiff's buildings in various amounts, therein stated, and that on April 17, 1928, while said policy was in force, said dwelling house and barn were destroyed by fire. It was further alleged that defendant denied all liability under said policy, and judgment was asked for $1875 on said dwelling house and $1,000 on the barn.

"The real issues were made by the answer and reply. In defendant's answer it was alleged that a certain provision of the policy, material to the risk, was violated, viz., one requiring plaintiff to

be the unconditional and sole owner of the property insured. It is charged that the title to real estate on which the buildings were located was vested in J. H. Fulbright, the plaintiff, and F. D. Fulbright, his wife, as tenants by the entirety; and that this policy, as well as a policy previously issued, of which the present policy was a renewal, never went into force and effect, but were thereby made void.

"The answer further sets up that in February, 1928, plaintiff entered into a valid written agreement binding himself to sell to one W. J. Alexander the said land and buildings alleged to have been insured; that Alexander held possession of said lands as purchaser thereof at the time of the fire, and, by reason of said purchase contract and possession thereunder, he acquired an interest in said land and buildings, whereby a change took place in the interest of insured, in violation of the terms of the policy, rendering same null and void for that reason. The answer further alleged that, upon learning of such facts for the first time, after the fire, it offered to pay and tendered plaintiff the premium paid, which offer was refused, and defendant then paid such amount into court.

"The reply alleged that plaintiff paid the full purchase price for said land with his own money, and that the policy was not voided by reason of the deed being made to plaintiff and his wife, jointly; that, 'the deed was not made as a gift or advancement or intended as such to plaintiff's wife, but merely a holding of convenience; that said joint deed made no material difference in the risk whatsoever or created such a hazard as to require an increase in the premium or one that would have been refused by the defendant company, and that at the time said policy was issued, the defendant knew the true ownership of the said property and so knowing should have written the policy accordingly; that said policy was in the possession of the defendant from its execution until after the loss alleged in plaintiff's petition and plaintiff did not know that it was written in his name only until after the fire.'

"It is further alleged that the policy sued on was not a renewal of a former policy; that 'on February 20, 1928, long after said former policy expired, the defendant executed the policy sued on as a new policy through its local agents to this plaintiff upon verbal application at that time; and that the defendant had full knowledge of the character of said property, the title thereto, the physical risk as well as the moral risk and standing of the plaintiff as well as his wife, F. D. Fulbright, and that the defendant, knowing such facts, executed said policy as it desired, and it was its duty to make such endorsements upon said policy as were proper and right; and that no unusual or unreasonable risk was taken by defendant on account of

the ownership of said property and defendant knew that plaintiff had an insurable interest as owner in said property.'

"The reply further denied any change of title by reason of the Alexander contract, but that Alexander completely failed to comply with any essential parts of the contract of sale, and that defendant, at the time it wrote the policy sued on, had full knowledge of the existence of said Alexander contract, and the policy was not thereby invalidated.

"Upon the issues thus made trial was had before the court without a jury, resulting in a judgment for plaintiff, from which judgment defendant has appealed."

By deed dated August 23, 1924, the farm upon which the insured buildings were located was conveyed to "J. D. Fulbright (plaintiff) and F. D. Fulbright, husband and wife." In September, 1924, the property was insured by defendant for three years in the name of plaintiff alone, that policy, No. 14272, expiring in September, 1927. About five months later, February 20, 1928, the present policy, No. 17416, was issued, also in the name of plaintiff alone. In both policies plaintiff's title is described as the sole and unconditional ownership. The last policy contains the provisions pleaded in defendant's answer. Defendant sought to show that the first policy was issued upon a written application of plaintiff containing the representation that he was the sole and unconditional owner, but failed to prove that plaintiff had signed the application which it offered to introduce. Plaintiff's evidence showed that he did not sign that or any written application for either policy, his contention being that the policy in suit was a new policy issued upon verbal request made to defendant's local agent and was not a renewal of the first policy, while defendant contended it was a renewal. The application for the first policy, offered by defendant, was excluded. It is not claimed that there was a written application for the policy sued on. When the first policy expired the local agent wrote defendant company's St. Louis office requesting renewal, which was not then issued 'owing to some differences between that office and the local office pertaining to their accounts, which seem to have been adjusted prior to the issuance of the policy sued on. In February, 1928, plaintiff verbally requested defendant's local agent to insure the property, and the agent thereupon, on February 18th, wrote the St. Louis office referring to the fact that policy No. 14272 had not been renewed as previously requested and asking that a three-year policy be written covering the buildings as in the former policy, stating the items of coverage. This policy was thereupon issued on February 20th. The aggregate amount of insurance is the same as the total of the items mentioned in the agent's letter, but differently distributed.

The amount on two buildings is slightly reduced and the amounts deducted therefrom are placed on a garage and chicken house not mentioned in the letter, nor, it may be added, in the application which defendant sought to introduce. The reason for the change is not explained. It is immaterial unless it bears upon the question of whether or not the policy sued on was a renewal of No. 14272. Plaintiff's evidence was that he at no time told defendant's agent that he owned the property individually, or made any misstatements or misrepresentations of any kind concerning his title, but gave truthfully all information requested. There was no evidence to the contrary.

Plaintiff's title is the deed above referred to, which, nothing else appearing, it is conceded would vest in plaintiff and his wife an estate by the entirety. Plaintiff testified that he furnished the entire purchase price of the property and directed the deed to be made to himself and his wife, as it was made. Over defendant's objections he further testified that he had the deed thus made so that the property, upon the death of either of them, would go to the survivor "without any further trouble;" that he did not understand that by that kind of deed his wife would have any interest in the land until his death: "My idea was as long as I lived the land was mine, and if I died the land would be hers, and there would be no expense of administration in winding up that part of the estate;" and that he did not intend to put any title in his wife during his lifetime, but considered himself the sole and unconditional owner during his lifetime; that he paid taxes and up-keep and received the rents.

Presumably because of that testimony the trial court refused a declaration of law requested by defendant to the effect that plaintiff was not the sole and unconditional owner of the insured property under the deed to himself and wife; but gave a declaration that the provision of the policy making it void if plaintiff was not the sole and unconditional owner was valid and binding on plaintiff.

I. The majority opinion of the Court of Appeals concedes, and rightly, we think, that "in the absence of any other facts" title held by the insured and his wife as tenants by the entirety would not be in compliance with the sole and unconditional ownership provision of the policy and would avoid the policy, since the insured accepted the policy containing that provision, unless the condition was waived or defendant is estopped to assert it, of which hereafter. See Clawson v. Citizens' Mutual Fire Ins. Co., 121 Mich. 591, 80 N. W. 573, 80 Am. St. 538; Schroedel v. Humboldt Fire Ins. Co., 158 Pa. 459, 27 Atl. 1077; Aetna Ins. Co. v. Resh, 40 Mich. 241; Genesee Falls Permanent S. & L. Assn. v. U. S. Fire Ins. Co., 44 N. Y. Supp.

979; Western Assurance Co. v. White (Ark.), 286 S. W. 804, 48 A. L. R. 349, and annotations, p. 353; 26 C. J. 180, sec. 219. During the existence of the marriage relation each of the tenants by the entirety, by what has been termed a legal fiction, owns the entire title. But that ownership cannot be construed to be the sole and unconditional ownership contemplated by the provision referred to in an insurance policy. To illustrate, if one spouse can insure as sole and unconditional owner and meet the requirements of that clause, so can the other, for their titles and rights are equal, and there could thus be two valid policies held by different individuals on the same property, each for the full insurable value of the property. It has been held (Bains v. Bullock, 129 Mo. 117, 31 S. W. 342) that one tenant by the entirety may alone maintain ejectment against a stranger, but that is because as against a stranger either of the tenants by the entirety is the owner and entitled to possession. But neither alone can bind or dispose of any interest in the property, nor is the interest of either subject to execution for his or her individual debts. [Stifel's Brewing Co. v. Saxy, 273 Mo. 159, 201 S. W. 67.] In Frost v. Frost, 200 Mo. 474, 98 S. W. 527, it was held that money received from the sale of real estate held by the entirety retained the same character and when invested by the husband in other land such land belonged to him and his wife as tenants by the entirety. How can it be held that either tenant by the entirety can insure the property as sole and unconditional owner and in his or her individual capacity collect and appropriate the insurance money upon destruction of the property, thus appropriating to himself or herself part of the property which belonged equally to the other? It seems clear that whatever may be said as to each tenant by the entirety owning the entire title for certain purposes, such ownership of each is not the "sole and unconditional ownership" meant by the provision of an insurance policy, such as that here under consideration.

II. But, while conceding that, the Court of Appeals held that plaintiff's evidence tended to establish a resulting trust in favor of plaintiff, thereby placing in him the equitable title, which was sufficient compliance with the ownership provision of the policy, since at the time of making the deed plaintiff did not intend to convey any present interest to his wife and did not believe he was doing so. And respondent so contends here.

We cannot agree with that conclusion. The Court of Appeals cited two prior decisions of its own, Turner v. Home Ins. Co., 195 Mo. App. 138, 189 S. W. 626, and Monpleasure v. Home Ins. Co., 214 Mo. App. 530, 259 S. W. 815, and in support of the proposition

that when a husband who has paid the consideration causes a deed to be made to his wife the presumption ordinarily existing in such case that he intended it as a gift to or settlement upon the wife may be overcome by evidence showing that no such settlement was intended, the following decisions of this court are cited: Price v. Kane, 112 Mo. 412, 20 S. W. 609; Thierry v. Thierry, 298 Mo. 25, 249 S. W. 946, 952; Clark v. Clark, 18 S. W. (2d) 77.

In the Turner case the husband bought the property, paying for it with his own means, and directed that the deed be made to himself and thought that it had been so made until after the fire in question. He had not intended that his wife should be named with himself or alone as grantee. It was properly held that there was a resulting trust in his favor, and that he was the equitable owner of the whole estate.

In Price v. Kane, supra, the rule that the presumption above mentioned may be rebutted is stated, but that decision does not warrant the conclusion that there was a resulting trust in plaintiff's favor under the evidence in this case. There were two lots involved in that case. As to one, a trust in favor of the husband was declared, but the evidence showed that that lot had been purchased by defendant's wife, in his absence *but for his use and benefit,* the husband's money paying for it, and that the wife took title in her own name at the suggestion of friends. There was no intention on the part of either of vesting any title in the wife. As to the other lot the husband furnished the purchase price and caused the deed to be made to a trustee for the sole and separate use of the wife, the latter promising to give it back to the husband whenever he requested. The deed contained no suggestion of a trust in favor of the husband. It was held that there was no resulting trust in his favor, that the express trust— that the property would be reconveyed to the husband on request— could not be proved by parol evidence, and that the husband could not recover.

Thierry v. Thierry, supra, and Clark v. Clark, supra, were both cases in which the facts, so far as pertinent here, were that the husband furnished the purchase price and had the deed made to his wife for convenience but without intention of vesting any title or interest in the wife. In both the well recognized rule is announced, as in Price v. Kane, supra, that the presumption of an intention to make a settlement upon the wife arising from the fact of payment by the husband and transfer to the wife may be overcome by evidence showing there was no such intent.

It may be conceded also that where the deed is made to husband and wife a resulting trust in favor of the husband could arise in like manner and for like reasons and subject to the same rules as in a

case where the husband furnishes the purchase money and the deed is made to the wife alone. Such possibility seems to be impliedly recognized in Bender v. Bender, 281 Mo. 473, 220 S. W. 929, and State ex rel. Roll v. Ellison et al., 290 Mo. 28, 233 S. W. 1065. But in all the cases that have been called to our attention in which a resulting trust was declared in favor of the husband who had furnished the purchase money it was shown that he did not intend to vest any title or interest in the wife. No case has been cited nor have we found any in which such trust was held to arise where, as here, the husband furnished the purchase money and purposely caused the deed to be made to his wife or to himself and wife, intending thereby to convey an estate to her, but seeking to limit that estate and the scope and effect of the deed, contrary to its terms, by his mere intention that the deed should not have the full effect the law affixes to it. Nor have we found any case in which, under such circumstances, a resulting trust has been declared in favor of the husband on the ground that he did not understand to the full extent the legal effect of the deed he caused to be made. The resulting trust claimed to exist must have arisen, if at all, when the deed was made. [Bender v. Bender, supra; State ex rel. Roll v. Ellison, supra.] Plaintiff intended that his wife should, by virtue of the deed, take the entire title upon his death if she survived him and he knew the deed would give it to her. It could only have that effect if it conveyed to her a present interest and that interest was necessarily the whole title jointly with him while both lived and the marriage relation continued. The survivor in an estate by the entirety does not acquire a new title nor any title upon the death of the other tenant but simply continues to hold the title he or she already had by virtue of the conveyance to them, freed of the contingency. [Frost v. Frost, supra.] To effectuate plaintiff's intention that his wife should take if she survived him the deed must have passed to her such present title and interest upon its execution and delivery.

It would seem that plaintiff is in effect seeking to carve out, as it were, and reserve to himself a life estate in the property conveyed during the lives of himself and his wife leaving the deed to operate as a conveyance of an estate by the entirety of only the remainder subject to such life estate; and this by his mere unexpressed intention—a mental reservation, so to speak. The question suggests itself: would such estate in him, even if clearly and legally existing, comply with the sole and unconditional ownership clause of the policy and put him in any better situation? But waiving that question, it seems clear to us that the operative effect of the deed cannot be thus altered. There is no suggestion in the record of fraud or mistake, except plaintiff's mistaken idea of the legal effect of the deed he ordered made.

To hold that, on the facts here shown, a husband can have a deed made to himself and wife, as was done here, and on proof that he so intended or that he did not fully understand its effect, have it treated without reformation as conveying a less or different estate than it purports to convey or as containing a reservation not therein expressed, it seems to us, would not only be contrary to well recognized rules of law relative to conveyances and other written instruments, but would breed uncertainty and confusion regarding titles to real estate and open the way for the commission of fraud and perjury.

Without reference to this respondent, who appears to be a man of high standing, but by way of illustration, if respondent's contention were allowed, the husband in such case, if an attempt were made to subject his supposed life estate to the payment of his individual debt, could deny that he owned any estate subject to execution and point to the deed for confirmation of such denial. Or if the marriage were dissolved by divorce, whereupon the estate, if one by entirety, would become an estate held by him and his former wife as tenants in common (State ex rel. Roll v. Ellison, supra), he could claim the life estate in the whole property, reducing the divorced wife's interest to the remainder in her moiety subject to the life estate. The legal effect of the conveyance, made at the instance of the husband, and the quantum of interest conveyed to the wife, might thus be made to depend upon what the husband chose to claim, in the exigency of a given situation (if he could convince the court that his contention was true), were his intentions and his understanding of the effect of the deed when made. Titles should not be left thus uncertain.

We hold that plaintiff and his wife, under the deed to them, took and held title as tenants by the entirety in accordance with the deed; that there was no resulting trust in plaintiff's favor, and that he cannot be deemed the equitable owner to the exclusion of his wife during their joint lives.

The decision on this point in Monpleasure v. Home Ins. Co., supra, is based on facts somewhat similar to those here involved. In so far as that decision is in conflict with the views herein expressed it is overruled.

It results that the judgment of the circuit court cannot stand because it is obvious from the declarations of law given and refused that the decision below may have been reached, partly at least if not wholly, upon the theory that the plaintiff was sole owner within the meaning of the policy.

III. It does not follow, however, that the judgment must be reversed outright. We are inclined to think there was sufficient evi-

dence of waiver or estoppel as to the condition relative to ownership to make a submissible case on that theory. As stated above, plaintiff's evidence tended to show that he did not sign any written application and that he made no misrepresentations as to his title, but gave truthfully whatever information was requested of him by defendant's agents. The local agents were C. R. and Max Fulbright, father and son (distant relatives of plaintiff), doing business as Fulbright & Company. C. R. Fulbright died after the first policy was issued, but prior to issuance of the one sued on, and Max continued the business alone. Plaintiff's evidence tended to show that on the first as well as the second occasion he requested the insurance of Max, who usually attended to plaintiff's insurance business. The application for the first policy seems to have been filled out by an employee in Fulbright & Company's office and plaintiff's name must have been signed thereto by C. R. Fulbright as plaintiff did not sign it himself and, according to Max' testimony, the handwriting of the signature resembled that of his father who, Max said, had attended to that transaction. Plaintiff testified on direct examination that the agents got the description of his farm from his deed. On cross-examination he qualified that by saying they must have obtained it from that source as they could have gotten it in no other way, he not having given it to them.

Max Fulbright, called by plaintiff, testified that while he did not actually know that the title to the farm in question was held by plaintiff and his wife as tenants by the entirety, he assumed such to be the fact because he had known plaintiff many years and knew that "practically everything they [plaintiff and his wife] ever owned was owned jointly;" that he thought when the insurance was requested that this property was so held; and that assuming that the title was so held he would have written the policy in plaintiff's name alone. It was shown by defendant's evidence that the premium would have been no greater had plaintiff and his wife been named in the policy as owners by the entirety.

Defendant's evidence also tended to show that its local agents, Fulbright & Company, did not have authority to issue policies of insurance on farm property, though they had such authority as to city property. "They are the local agents for our company to solicit and take farm insurance, as well as town business, but only on application." Farm policies when issued at the St. Louis office were sent to the local agents, by whom they were delivered to the insured. Plaintiff's evidence showed that the local agents collected the premium.

In Combs v. Hannibal Sav. & Ins. Co., 43 Mo. 148, recovery was resisted on the ground of false representations and warranties. The policy had been issued upon an application stating insureds' interest to be the fee-simple title and unencumbered. It was in fact only an encumbered equitable title. The plaintiffs claimed and their evidence tended to show that one Rust, defendant's agent, solicited the insurance and filled out the application in his own language, plaintiffs having given full and correct information as to their title, and that they signed the application upon the agent's assurance that it was all right and without being aware of its phraseology or that the words "fee simple" and "no encumbrance" were in it. Beyond the fact that Rust was defendant's agent in soliciting insurance the precise scope of his authority was not shown. But as we understand the opinion he was treated therein as a soliciting agent and as such was held to be defendant's agent in taking and filling out the application. The court said, page 151:

"Assuming that he acted as the agent of the defendants in filling up the application, and did not therein exceed his authority, it follows that his acts were the acts of the defendants, and that they are bound by what he did as though done by themselves, and that his knowledge is theirs."

The court further said that the soliciting agent's authority to take applications for insurance carried with it the legal implication of authority to fill up the application and to do all things needful in perfecting it.

In Ross-Langford v. Mercantile Town Mut. Ins. Co., 97 Mo. App. 79, 71 S. W. 720, the insurance company's soliciting agent was informed that the property was a dwelling house with one room therein used as a millinery store. With that knowledge he prepared the application describing the property as a dwelling house and it was signed by the applicant, forwarded to the company and the policy was issued. The property burned and payment of the loss was resisted on the ground of material misrepresentation in the application. It was held in a well considered opinion in which numerous authorities are reviewed that while the misrepresentation was material it had been waived; that the agent's knowledge was the company's knowledge and when it issued the policy and accepted the premium with knowledge, or imputed knowledge, of the misdescription, it was estopped after a loss to question the correctness of the description or to claim a forfeiture under the provisions of the policy.

In Nute v. Hartford Fire Ins. Co., 109 Mo. App. 585, 83 S. W. 83, the ownership of the insured property was not correctly stated in the policy, but defendant's soliciting agent had been correctly informed

and knew how the title was held. The court, 109 Mo. App. 1. c. 596, said: "The acts and declarations of the defendant's soliciting agent while writing the policy were those of the defendant." It was held that the defendant was estopped to deny liability on that ground.

In Ormsby v. Laclede Farmers Mut. Fire Ins. Co., 105 Mo. App. 143, 79 S. W. 733, the defendant's agent filled out the application which the insured signed, but the latter "had nothing to do with the statements therein contained and did not know what they were." The court said: "These facts make the statements in the application the statements of the defendant itself and not this plaintiff, and it is estopped to claim them as warranties." [Citing cases.] That the agent was only a soliciting agent see same case on first appeal, 98 Mo. App. 371, 72 S. W. 139. And see Stubbins v. State Farmers' Mut. Ins. Co. (Mo. App.), 229 S. W. 407, holding that a soliciting agent having authority to take application was defendant's agent in doing so and where he had knowledge of the facts the company was estopped from setting up breach of warranty, notwithstanding limitations placed upon the agent's authority in the application, policy and by-laws.

If an agent having authority to issue policies knows all the facts and takes the premium and issues the policy the company is estopped to set up misrepresentations in the application if they are due to carelessness, ignorance or fraud of the agent. [Rissler v. Am. Cen. Ins. Co., 150 Mo. 366, 51 S. W. 755; State ex rel. Bull Dog Assn. v. Bland, 316 Mo. 559, 291 S. W. 499.] Since the knowledge of a soliciting agent who has authority to and does make out the application is the knowledge of the company, we can see no reason for applying a different rule, in that respect, in such case. This view finds support in Clawson v. Citizens Mut. Fire Ins. Co., supra, in which, we understand from the opinion, the agent who filled out the application did not have authority to issue policies, the application having been sent to the home office of the company which issued and forwarded the policy. The plaintiff alone was named as owner, the policy containing a provision making it void if the insured was not the sole and unconditional owner. In fact he and his wife owned the property as tenants by the entirety. There had been neither fraudulent misrepresentations nor concealment of his title by the insured. It was held there was a waiver of the conditions.

Bearing in mind that the plaintiff is entitled to the benefit of such favorable inferences as may reasonably be drawn from the facts proved we think there were sufficient facts and circumstances shown in the instant case to make a submissible issue on the question of the agent's knowledge of plaintiff's title. If the agent had such knowledge it must be deemed the company's knowledge and the company

cannot now escape liability on the ground that the title was not correctly represented or that plaintiff was not the sole owner.

IV. Relative to the alleged change of ownership by the attempted sale to Alexander but little need be said. Alexander had been in possession as tenant. On February 17, 1928, plaintiff (his wife not joining) and Alexander signed a contract whereby Alexander agreed to buy the farm, he to make certain payments annually for a stated time at the expiration of which he was to receive a deed. The contract conveyed no interest in the property since plaintiff alone could convey none and, moreover, defendant's agent was fully informed of this alleged contract and the terms thereof when this insurance was requested by plaintiff and when the agent wrote the letter of February 18 to defendant's St. Louis office pursuant to which the policy sued on was issued.

The judgment of the circuit court is reversed and the cause is remanded for new trial. *Westhues* and *Fitzsimmons, CC.*, concur.

PER CURIAM:—The foregoing opinion by Cooley, C., is adopted as the opinion of the court. All concur.