AMERICAN FIRE AND INDEMNITY
COMPANY, Appellant,

v.

John G. LANCASTER, Mildred Bresley,
Stephen Bresley, Allstate Insurance
Company, a Corporation, Fred Orlando,
Audrey Orlando, Al Burgdorf and Pa-
tricia Burgdorf, Appellees.

No. 19474.

United States Court of Appeals
Eighth Circuit.

Sept. 15, 1969.

Robert C. Ely, St. Louis, Mo., for appellant; David L. Campbell, Clayton, Mo., on the briefs.

Springfield Baldwin, St. Louis, Mo., for John G. Lancaster, made argument for appellees; Fred and Audrey Orlando, St. Louis, Mo., on the briefs.

Paul S. Brown, St. Louis, Mo., for Allstate Ins. Co.

Bart Mantia, St. Louis, Mo., for Mildred and Stephen Bresley.

Before VAN OOSTERHOUT, Chief Judge, and MEHAFFY and GIBSON, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

The American Fire and Indemnity Company (American) filed a declaratory judgment action in the United States District Court for the Eastern District of Missouri seeking to have an automobile liability insurance policy issued to John G. Lancaster declared void due to alleged material misrepresentations by the insured on the application for insurance. The District Court held the policy valid, and American appeals. Diversity jurisdiction has been established.

The two basic issues presented are (1) whether the policy was written and procured by an agent of American or by a broker and (2) the effect and materiality of alleged misrepresentations contained in the application for insurance.

Lancaster had been insured by the La Salle Insurance Company under a policy procured by George Jennings, a vice president and employee of General Insurors Inc. (General), an insurance agency. Jennings suggested to Lancaster that automobile accident liability insurance could be obtained for a lower premium than what he was then paying. In pursuit of this Jennings prepared an application for Lancaster for insurance with American, a preferred risk insurance company, charging about 25 per cent less than regular line insurance companies. Policies were individually written on the basis of an insured's good driving record. Lancaster signed an undated application for insurance with American in October 1966, answering no to the questions on the application as to whether he had been involved in a traffic accident or received a traffic ticket for a moving violation in the previous 36 months. The application was not dated because he was negotiating for the purchase of a 1966 Mustang automobile and did not wish his new insurance to come into force until the purchase was consummated.

On November 5, 1966 Lancaster was involved in an accident with a parked car owned by Tom Vaughn. Lancaster reported the accident to Jennings who discussed the accident with Vaughn. Vaughn claimed $250 damages, but Lancaster believed the damages to be less than $50. Since the amount was small, Lancaster asked Jennings not to report the accident to La Salle. Jennings did not report the accident to La Salle nor did he alter Lancaster's application to American nor did he tell anyone connected with American or General about the accident. Jennings testified that he had a duty to report the accident but that he failed to make a note of the accident because it involved less than $50 in damages which is not ordinarily considered sufficient to require a report, and that he was not blessed with the best memory.

Lancaster purchased the Mustang on December 23, 1966 and telephoned Jennings to advise him of the purchase. Jennings told Lancaster he was covered as of that moment, dated the application, sent it in to American, canceled the policy with La Salle, and sent a binder to Lancaster showing coverage as of December 23, 1966. Evidently the application was not discussed during the December 23rd telephone call.

On January 1, 1967 Lancaster was involved in another accident with an

automobile driven by Stephen Bresley. As a result of this accident, Allstate Insurance Company, which insured Bresley, claimed damages against American in the amount of $1,395.66 for damages to Bresley's car. Mildred Bresley, a passenger in the car, claimed bodily injury and sued Lancaster for $10,000, the policy limit.

American contends that Lancaster's application contained two material misrepresentations; namely, that he had not been involved in an accident in the previous 36 months, and that he had not been convicted of a traffic violation other than illegal parking in the previous 36 months. American as a preferred risk company contends these misrepresentations are material to the risk it accepted, that it would not have issued the policy had it been aware of the accident of November 5, 1966, and feels the policy should be declared void *ab initio*.

Lancaster and the other defendants claim Jennings' knowledge of Lancaster's November accident should be imputed to American since Jennings was American's agent, and claim the alleged misrepresentation regarding the traffic violation was not proven to be fraudulent or material to the risk. Defendants make several other arguments, largely of a technical nature, which we find it unnecessary to reach.

It is undisputed that Lancaster was involved in an automobile accident on November 5, 1966. It is also undisputed that the application, though in this regard truthful when signed, contained a false statement when delivered—that Lancaster had not been involved in an automobile accident in the previous 36 months.

■ The law in Missouri is that a material misrepresentation in an application for insurance is a valid ground for avoiding the policy, even though the misrepresentation is innocently or inadvertently made. Pittman v. West American Ins. Co., 299 F.2d 405 (8th Cir. 1962); Minich v. MFA Mut. Ins.

Co., 325 S.W.2d 56 (Mo.App.1959); Dixon v. Business Men's Assurance Co., 365 Mo. 580, 285 S.W.2d 619 (1955). The test for materiality is stated in Miller v. Plains Ins. Co., 409 S.W.2d 770, 774 (Mo.App.1966):

> "A representation made to an insurer that is material to its determination as to what premium to fix or to whether it will accept the risk, relates to a fact actually material to the risk which the insurer is asked to assume."

We assume that American would not have accepted the risk here involved if it had known of Lancaster's then recent accident record. Thus the eventually incorrect statement that the insured had not been involved in an automobile accident in 36 months was material to the risk. The correct information on the accident was, however, fully disclosed to Jennings who, according to the finding of the District Court and on surface appearances, was an agent of American.

■ American had a contract with General Insurors Inc. entitled Agency Contract. Under the contract American appointed General its agent "For the purpose of procuring applications for insurance policies * * * collecting premiums thereon, and performing such other duties as are usually required of agents * * *." Paragraphs 4 and 9 of the contract implied that General also had the power to issue policies but the addendum to the contract clearly provided that applications for insurance policies were to be submitted to American, and if accepted, issued by American. The addendum did give General the actual authority to issue temporary coverage pending, and subject to, American's investigation. It is clear that General was the agent of American for the purpose of procuring insurance business though this agency agreement had some restrictions and limitations.

Jennings was an employee of General. He solicited applications for insurance, in essence sold insurance; he was a vice president, as probably were all the salesmen; and he was a member of

General's Board of Directors and held a license as an insurance broker.

■ Since Jennings had no contract directly with American his scope of authority was strictly derivative of American's agency agreement with General. His actual authority, express and implied, is not entirely clear, though he undoubtedly possessed actual authority to solicit applications for insurance with American. As the District Court pointed out, "A corporation may act only through the actions of individuals." Therefore, to the extent of soliciting insurance business at least, he must have been the agent of American.

In Fulbright v. Phoenix Ins. Co., 329 Mo. 207, 44 S.W.2d 115, 120 (1931) the Missouri Court said that a person with authority similar to that possessed by Jennings was the company's "agent in taking and filling out the application." The Court further held, citing many Missouri cases, that the "knowledge of a soliciting agent who has authority to and does make out the application is the knowledge of the company." *Id.* There as here the agent had no power to actually issues policies, he was merely a soliciting agent. *See* Stubbins v. State Farmers' Mut. Ins. Co., 229 S.W. 407 (Mo.App.1921), and Clawson v. Citizens' Mut. Fire Ins. Co., 121 Mich. 591, 80 N.W. 573 (1899), cited with approval in *Fulbright, supra.*

American suggests that Jennings was a broker representing the insured and not its agent at all. It points out that only Max Drake and Arthur Blumeyer of General were licensed as resident agents of American. But Blumeyer and Drake were so licensed only because of a requirement of Missouri law, V.A.M.S. § 375.200 (1959), that foreign insurance companies must have licensed resident agents in order to issue policies in Missouri. It was not necessary for all of American's agents to be so licensed. It was only necessary to have one or two persons who could countersign its policies. In fact, neither Drake nor Blumeyer had separate contracts with American nor were they paid anything extra for their service. Thus, this factor in no way reflects upon the agency relationship between American and other employees of General who could be agents without being official resident agents.

American points to several cases which it says indicate that Jennings is a broker and as such is the agent of the insured. In Buck v. Stuyvesant Ins. Co., 209 Mo.App. 302, 237 S.W. 840 (1922), the Court held that a broker is usually the agent of the insured. But that Court also held that which party the broker represents is a matter of fact in each case and that in any one case a broker may represent the insured and the insurer for different purposes. That Court also cited with approval a case very similar to the present case, Farber v. American Auto Ins. Co., 191 Mo.App. 307, 177 S.W. 675 (1915), in which the "broker" was found to represent the insurer since he worked for the insurer and solicited the insurance application from the insured. This would seem to support the proposition that whether Jennings is denominated a broker or an agent he is the agent of American to the extent he solicits applications for policies with American. Here he used an American application form and was presented to the public generally and to Lancaster specifically as a soliciting agent for American. American, through General Insurors, cannot use Jennings for solicitation purposes, accept the rewards of his work, pocket the premiums, and then when it finds it advantageous, disclaim its solicitor and place him in the legal category of an agent of the party solicited.

The case of Travelers Indem. Co. v. Nat. Indem. Co., 292 F.2d 214 (8th Cir. 1961) cited by American does not purport to interpret Missouri law since it originated in Minnesota, and is inapposite since the criteria used there for determining that a "broker" with authority similar to Jennings' was the agent of the insured required that the broker neither be held out to be the insurer's agent nor in fact be in the special

employ of the insurer, while in the present case the forms given to Jennings for his use hold him out to be an agent and further General is in the special, if not exclusive, employ of American.

Finally, American directs our attention to Farrar v. Mayabb, 326 S.W.2d 337 (Mo.App.1959), which held that where a broker's interest is adverse to that of his principal, he cannot be the principal's agent. American suggests that Jennings' main interest was in procuring low rate insurance for his long time customer (3 years) Lancaster, and that, therefore, Jennings' interest was adverse to that of American. However, it is clear that Jennings' interests were not adverse to American's as were those of the agent to his principal in *Farrar, supra.* In *Farrar,* the agent was considered to be the insured's agent. As such, however, she was embezzling his premium payments. Therefore, the Court held that the insured could not be held to have received notice of cancellation which was sent to his "agent." In that case the agent clearly had only her own larcenous interest in mind. Here, Jennings sought to procure low cost insurance for his customer Lancaster but represented American in selling the insurance and procuring the application. Jennings was in fact carrying out the provisions of the agency contract for insurance business that American had made with General.

Jennings was American's soliciting agent within the test used in Fulbright v. Phoenix Ins. Co., 329 Mo. 207, 44 S.W.2d 115 (1921), so that his knowledge is imputed to American. After all, Lancaster did not attempt to conceal the accident. He reported it to the man whom he considered to be the representative of American, and to whom American through its agency contract with General gave actual and apparent authority to be its agent. Thus, American cannot avoid its insurance policy due to the misrepresentation regarding the automobile accident, since its agent had knowledge of the true situation. Fulbright v. Phoenix Ins. Co., supra.

American also contends that even if Jennings is held to be its agent so that it is held to have knowledge of Lancaster's accident, nevertheless the policy is void due to Lancaster's false representation that he had not been convicted of a traffic violation in the previous three years. This information, American suggests, was concealed and was unknown to all except Lancaster. Although the testimony was somewhat vague as to the exact date of Lancaster's traffic conviction, the trial judge properly found it occurred within the previous 36 months.

Under Missouri law, however, a mere non-fraudulent misrepresentation on an application will not void an insurance policy unless it is incorporated into the policy itself or unless the answers in the application are in the form of a warranty. Dixon v. Business Men's Assurance Co., 365 Mo. 580, 285 S.W.2d 619, 625 (1955); Lieberman v. American Bonding and Cas. Co., 244 S.W. 102 (Mo.App.1922). In the present case, Lancaster did not warrant his answers in the application to be true, he merely declared them to be true. A declaration is not equivalent to a warranty. And the policy itself purports to be issued only in reliance upon certain declarations within the policy which contain no reference to the application.

Where the representation is not so warranted or incorporated into the policy, the representation not only must be false, but also material to the risk in order for the insurer to avoid its policy. Dixon v. Business Men's Assurance Co., *supra;* Miller v. Plains Ins. Co., *supra;* Lieberman v. American Bonding and Cas. Co., *supra.*

In Miller v. Plains Ins. Co., *supra,* the Court found failure on an application to report a traffic conviction for hazardous driving was sufficient to enable the insurer to avoid the policy because the only evidence therein was

**1150**

that the insurer would have declined the risk had it known the truth. Thus, the misrepresentation was material and fraudulent. In this case, however, American offered no direct testimony or evidence of any kind that the failure to report the conviction for failure to yield the right of way would have resulted in failure to accept the risk, or the levying of a higher premium, or was material to the risk in any way. This is in direct contradistinction to testimony offered by American that failure to report the accident was material, and if the accident had been revealed the risk would have been declined. Furthermore, the application requires that persons explain answers which admit traffic accidents or tickets. This might imply that under certain circumstances a traffic ticket might not result in a refusal to accept the risk or a higher premium. The trial court found that there was no evidence to support the materiality of the false statement regarding the traffic violation. This finding is certainly not clearly erroneous and we affirm it.

Finally, there is a suggestion in American's argument that neither Jennings nor General had the power to issue a binder. Regardless of the scope of Jennings' authority, General had actual authority to issue the binder under the addendum to the contract between American and General, and Jennings' issuance of the binder was approved by Max Drake, American's resident agent, and, according to American's exhibit 6, was ratified by American.

In summary, we feel it would be unjust to allow American to authorize Jennings to solicit applications for its insurance, and to hold him out as an agent, but at the same time to deny responsibility for his actions; and we feel that American failed to prove the materiality of the traffic violation.

Judgment affirmed.