Inas MORELAND, Appellant,

v.

STATE FARM FIRE AND CASUALTY COMPANY, Respondent.

Inas MORELAND, Respondent,

v.

STATE FARM FIRE AND CASUALTY COMPANY, Appellant.

Nos. 12946, 12957.

Missouri Court of Appeals, Southern District, Division One.

Dec. 8, 1983.

558

Robert S. Wiley, Crane, Joe R. Ellis, Cassville, for Inas Moreland.

Bussell, Hough, O'Neal, Crouch & Hall, E. Mitchell Hough, Dale L. Davis, Springfield, for State Farm Fire and Cas. Co.

CROW, Judge.

These consolidated appeals come from a two-count suit by Inas Moreland (plaintiff) against State Farm Fire and Casualty Company (defendant) on a fire insurance policy. In Count I, plaintiff sought judgment reforming the policy so it would state the legal description of the location of a dwelling allegedly destroyed by fire during the policy period. In Count II, plaintiff sought $25,000 for loss of the dwelling, $12,500 for loss of unscheduled personal property therein, and $5,000 for additional living expense incurred because of the fire, together with a penalty of $4,250 for defendant's alleged vexatious refusal to pay, an attorney's fee of $6,375, interest and costs.

Count I was tried by the court[1] without a jury, and judgment was entered May 5, 1980, reforming the policy as prayed. An appeal by defendant from that judgment was dismissed as premature because Count II, at that time, remained untried.[2] There-

after, a motion by defendant for summary judgment on Count II was granted, and judgment was entered September 27, 1982, in favor of defendant on that count.[3]

Now, defendant appeals anew from the judgment on Count I, and plaintiff appeals from the judgment on Count II.

All of the testimony in the transcript was presented in the trial of Count I. No testimony was heard in adjudicating Count II.

At all times pertinent to the issues before us, plaintiff and her husband, Arvis Moreland, owned land (as tenants by the entirety) in the southeast quarter of the southeast quarter of section 26, township 25, range 25, and in the northeast quarter of the northeast quarter of section 35, same township and range, all in Barry County. The land in section 26 lay north of, and contiguous to, the land in section 35. There were 57 acres in all, 40 of which were in section 35. The dwelling in controversy was on the acreage in section 26.

Plaintiff had owned the 57 acres by herself before marrying Arvis.[4] The land had been acquired piecemeal, from different grantors at different times.

On June 12, 1975, plaintiff was residing in the subject dwelling. According to plaintiff, she and Arvis were "separated" at that time, having been so for "seven or eight months." Plaintiff recalled she had "already filed for a dissolution," and the division of property was "already settled on." She was to keep the land she had owned before marrying Arvis.

That morning (June 12, 1975), plaintiff, unaccompanied, went to the office of Richard E. Henderson in Aurora. Henderson was a self-described "independent contractor agent" for defendant.

---

1. Hon. W.H. Pinnell.

2. *Moreland v. State Farm Fire & Casualty Co.*, 620 S.W.2d 24 (Mo.App.1981).

3. Hon. Robert Yocom entered judgment on Count II, having been assigned as special judge when defendant's application for change of

judge was granted following dismissal of the appeal on Count I (footnote 2, supra).

4. The date of plaintiff's marriage to Arvis does not appear in the record, but certain deeds in evidence show that plaintiff was single in November, 1958, and was Arvis' wife in December, 1959.

Plaintiff told Henderson she "was about ready for some insurance" on the dwelling, as she had just redecorated it and was adding a room.

Henderson testified he did not know plaintiff or Arvis before June 12, 1975, and did not know where they lived. When plaintiff told Henderson where the dwelling was, he advised her he would have to see it before he could quote a rate. He arranged to meet her at the dwelling later that day.

During the afternoon of June 12, Henderson, as planned, went to the dwelling, meeting plaintiff there. Henderson inspected the dwelling, took pictures and made measurements. He told plaintiff he would insure the dwelling for $25,000, and prepared an application for insurance in that amount.[5]

Henderson placed plaintiff's name, alone, on the application. There was a conflict in the testimony as to why.

Plaintiff testified that Henderson "never asked me one word about the title." Plaintiff recalled telling Henderson that she and her husband were separated but not divorced, and that she had the property before the marriage. According to plaintiff, she explained to Henderson that the property would be hers later, "when the divorce was finished up." Plaintiff testified she told Henderson she wanted the insurance in her name even though her husband's name was on the property, because "he was signing that back to me along with some other or more stuff."

Henderson testified he asked plaintiff how the property was titled and she said it was in her name. Henderson recalled plaintiff saying "something about her separation and divorce but that her husband didn't have any interest in the property and it was hers." Henderson was not sure whether plaintiff said the property was hers before the marriage. According to Henderson, plaintiff did not refer to her husband by name.

On the application, Henderson showed the location of the dwelling as 57 acres in the "N¼ of NE¼" of section 35, township 25, range 25 in Barry County. There was also a conflict in the testimony as to how this occurred.

Plaintiff testified she told Henderson she did not know what section and township the property was in, that it could be section 35 or section 26, and she "didn't have no papers to show because I wasn't looking to insure it that day." Plaintiff quoted Henderson as saying it made no difference because he knew where the dwelling was located. Plaintiff denied having the legal description written on a paper in her purse.

Henderson testified plaintiff supplied the description he wrote on the application, that she had it written on a paper "like an old book they used in country stores that had a carbon on the back, a sales book." According to Henderson, plaintiff had this paper in her purse. Henderson admitted he was unfamiliar with the ranges and sections in the area and did not check the accuracy of the description, even though he could have. He denied telling plaintiff it did not matter whether the description was correct.

After Henderson finished preparing the application, plaintiff signed it and gave Henderson a check for the premium ($115) signed "Arvis Moreland By Inas Moreland." Henderson issued plaintiff a "binder" verifying coverage.

Defendant thereafter issued the policy in question, bearing a "countersignature date" of June 27, 1975, an inception date of June 12, 1975, and an expiration date of June 12, 1976. The policy showed the dwelling was located on "57 acres in the N¼ of NE¼" of section 35, township 25, range 25 in Barry County. Plaintiff, alone, was shown as the named insured.

On August 26, 1975, the dwelling was destroyed by fire.

Plaintiff thereafter submitted a proof of loss, which defendant rejected. Defendant's reasons for rejection included, among others, that plaintiff's statements as to ownership and location of the dwelling were "false and fraudulent," and were "highly

---

**5.** The application included all of the coverages for which plaintiff seeks recovery.

material" to defendant's willingness to issue the policy. Defendant asserted the policy would not have been issued "had the correct information been available to the company." Defendant declared the policy void "from the beginning," and tendered back the premium, which plaintiff refused.

This suit followed.

\*  \*  \*

Defendant's appeal (number 12957)

In deciding Count I, the trial court found that plaintiff gave Henderson the legal description shown on the application and the policy, that there were never any buildings on the land in section 35, and that the land in that section was virtually landlocked.

The court further found that when Henderson asked plaintiff how the property was titled, plaintiff informed Henderson that the property was in her name and that her husband had no interest in it. The court also found that Henderson made inquiry into plaintiff's marital status, and that he thereafter accepted the premium without making any further investigation.

The court concluded that the evidence failed to establish that plaintiff willfully provided an erroneous property description or that she willfully misrepresented her ownership interest in the property with the intent to defraud defendant. Any such conclusion, said the court, was overcome by the evidence that clearly established both plaintiff and Henderson were standing in the house that was in fact intended to be insured.

The judgment on Count I reformed the policy to show that the dwelling was located on 57 acres in the northeast quarter of the northeast quarter of section 35, township 25, range 25, and the southeast quarter of the southeast quarter of section 26, same township and range, in Barry County.

Defendant, seeking to overturn that judgment, briefs seven points. Before dealing with them, some observations about the remedy of reformation are helpful.

■ Equity will reform an instrument which, through mutual mistake of the parties, does not accurately set forth the terms of the agreement actually made, or which does not incorporate the true prior intentions of the parties. *King v. Riley,* 498 S.W.2d 564, 566[4] (Mo.1973). A mistake affording ground for the relief of reformation must be mutual and common to both parties to the instrument; it must appear that both have done what neither intended, and the mutual mistake, in order to justify granting the relief of reformation, must be established by clear and convincing evidence. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 267–68[14] (Mo. banc 1973); *Allan v. Allan,* 364 S.W.2d 578, 581 (Mo.1963).

■ Here, the trial court found that plaintiff and defendant intended the policy to cover the dwelling that burned August 26, 1975—the same dwelling Henderson had inspected, photographed and measured June 12, 1975. The evidence permits no other inference.

Plaintiff directed Henderson to that dwelling on June 12, 1975, met him there, and showed him through. He noted certain characteristics of the dwelling, including its dimensions, its partial second story, and the fact that it had been remodeled and had new carpet. He determined the maximum amount of coverage he would write, based on his calculations of what it would cost to replace the dwelling.

Defendant does not contend that plaintiff intended to insure any dwelling other than the one in issue, or that Henderson intended the policy to cover any dwelling other than that. Any such contention would be ludicrous. Defendant simply argues that reformation should be denied, even though, absent reformation, the policy covers no dwelling at all, there being none on the north quarter of the northeast quarter of section 35, the only land shown on the policy.

In arguing against reformation, defendant asserts (in point 5) that the trial court erred in granting reformation because plaintiff failed to prove mutual mistake by clear, cogent and convincing evidence, in that the greater weight of the credible evi-

dence showed that the legal description in the policy resulted solely from plaintiff's fraud, or alternatively, from her negligence.

As to fraud, defendant says that (a) plaintiff knew there were no buildings on section 35, (b) she knew an earlier house at the same location as the dwelling in issue had burned in 1955 or 1956, (c) she had been a party to 58 land transactions, 20 of which involved land in section 26, (d) she had acquired the land in section 35 when she was single, (e) she, according to Henderson, did not "equivocate" in the legal description she gave him, (f) she was "familiar with land descriptions"[6] and was aware of the difference between the tracts in sections 26 and 35, and (g) she had lived in the area where the dwelling was located for several years.

This evidence, says defendant, leads inexorably to the conclusion that plaintiff intentionally gave Henderson an incorrect legal description for the fraudulent purpose of describing property upon which there had been no prior fire claims. Consequently, there was, according to defendant, no mutual mistake.

The first flaw in this contention is that plaintiff did not testify she knew there were no buildings on section 35. At trial, the 40 acres in section 35 were referred to as the "Croutch property" (plaintiff had acquired that acreage from Ralph and Bessie Croutch in 1959). Plaintiff testified she knew there were no buildings on the Croutch property, but added that when she applied to Henderson for the insurance, she had forgotten the description of that property. This testimony in no way establishes that plaintiff knew section 35 was the section that contained the vacant 40 acres when she signed the insurance application.

█ Moreover, and fatal to defendant's contention, the trial court, as noted earlier, found that the evidence failed to establish

that plaintiff willfully provided Henderson an erroneous property description or willfully misrepresented her ownership interest with the intent to defraud defendant. These findings refute defendant's argument that plaintiff fraudulently misrepresented the location of the dwelling to Henderson. We are bound by the trial court's findings unless there is no substantial evidence to support them, or unless they are against the weight of the evidence. *Murphy v. Carron,* 536 S.W.2d 30, 32[1] (Mo. banc 1976); *Norcomo Corporation v. Franchi Construction Co., Inc.,* 587 S.W.2d 311, 317[3] (Mo.App. 1979). We find substantial evidence to support these findings, and we cannot say the findings are against the weight of the evidence. We therefore reject the fraud argument in defendant's point 5.

As to mistake, defendant says plaintiff should not be granted reformation to correct a mistake caused solely by her own negligence. Defendant argues that any mistake on its part was induced by plaintiff's negligence, thus the mistake was not mutual.

In support of this contention, defendant cites cases stating that an insured, upon receiving a policy, has a duty to examine it and notify the company if the policy does not correctly state the contract between the parties. Defendant says plaintiff was negligent because she failed to do so.[7]

█ The principle cited by defendant, while undoubtedly sound, is inapplicable here. The cases in which that principle has been applied have involved policies that provided coverages of a different scope or character than the insureds said they bargained for. Prompt examination of the policies would have brought the discrepancies to light.

Here, there is no dispute about the dwelling to be covered, the amount of the coverage, or the perils insured against. The only

6. To the contrary, plaintiff testified she has a fourth grade education, knows nothing about maps, and cannot read them.

7. It is arguable that defendant's underwriters were negligent in failing to detect the possibili-

ty of error in the description on the application, in that the size of the tract is shown as 57 acres, while a quarter of a quarter of a section of standard size contains only 40 acres. We need not, however, pursue that subject.

respect in which the policy may be said to misstate the agreement between plaintiff and defendant is that the dwelling to be covered is not on the land described in the policy. The description in the policy is the same as the description on the application plaintiff signed. Plaintiff testified that when she applied for the insurance, she did not know whether the dwelling was on section 35 or section 26, and that she was unaware the dwelling was not on the tract shown on the application until after the fire. Consequently, there was nothing on the policy that would have appeared erroneous to plaintiff.

Defendant faults plaintiff for taking no "steps" to correct the policy, but defendant supplies no hint as to what those steps should have been. Under the evidence here, we cannot declare plaintiff negligent for failing to ascertain that the dwelling was not on section 35 after she received the policy.

Defendant also argues plaintiff was negligent because, by her own testimony, she was "not aware of the true description and was fully cognizant of her ignorance of the true description."

■ The trial court made no finding as to exactly what plaintiff said to Henderson about the location. If we accept plaintiff's testimony as true, she told Henderson she did not know what section the dwelling was on, that it could be section 35 or section 26. We find nothing negligent about that. If we accept Henderson's testimony as true, plaintiff gave him the description from a paper in her purse. There was no testimony that Henderson asked plaintiff about the source of the description, who had written it on the paper, or why plaintiff believed it described the land where the dwelling sat. In our view, the fact that the description was wrong does not, by itself, brand plaintiff negligent. Defendant cites no case holding that one who mistakenly supplies an incorrect legal description for property to be covered by insurance is automatically guilty of negligence.

■ Even if, however, plaintiff had been negligent in initially supplying the wrong description, or in failing to detect the erroneous description in the policy, her negligence would not defeat reformation under the circumstances of this case. In *Cameron State Bank v. Sloan*, 559 S.W.2d 564 (Mo. App.1977), a bank negligently cancelled a note and released the deed of trust securing it. In affirming a judgment granting relief from that error, the Court of Appeals noted that negligence on the part of one party does not preclude a finding of mutual mistake. *Id.* at 567[1]. Negligence should not permit others to gain an unconscionable advantage to which they are not entitled when there has been no change of position in reliance thereon. *Id.* at 568.

Here, there was no evidence that defendant changed its position in reliance on the description in the application, or that defendant would have done anything differently had it known from the outset that the dwelling was on section 26.

As to defendant's "mutuality" argument, defendant cites no case holding that if one party makes a mistake, and the other party, believing the first party to be correct, joins in the mistake, the mistake is not mutual. We find the argument unpersuasive.

■ It is the duty of the court to enforce the contract that was really made, and when by mutual mistake a contract or other instrument is not expressed in such terms as have the force and effect that the parties intended, it is the clear duty of the court to correct the mistake. *Walters v. Tucker*, 308 S.W.2d 673, 675[2] (Mo.1957).

■ The trial court did not err in finding that the erroneous property description in the policy resulted from mutual mistake, or in correcting that mistake. Defendant's point 5 is denied.

■ Closely allied with defendant's point 5 is its assertion in point 6 that the trial court erred in refusing to consider the affirmative defense that plaintiff's negligence bars reformation. The trial court refused to consider the defense because defendant did not plead it. Defendant says

plaintiff's negligence was relevant to the issue whether plaintiff had "clean hands," a requirement for obtaining reformation which the court can invoke on its own motion.

We have earlier rejected defendant's contention that plaintiff was negligent. Defendant cites no case holding that one who mistakenly furnishes an insurer the wrong description of the property to be insured is thereby deemed to have unclean hands. We find no merit in defendant's point 6.

In point 1, defendant asserts the trial court erred in excluding evidence of prior fires on property owned by plaintiff or her "close relatives" because such evidence would have tended to establish a course of fraudulent conduct by plaintiff against insurance companies and a motive for her alleged fraudulent conduct in the instant case. Defendant says it knew of 11 such fire losses prior to the fire in dispute, which would have established that the latter was of incendiary nature. Defendant's argument, as we understand it, is that if plaintiff obtained the instant policy for a fraudulent or inequitable purpose, she is not entitled to reformation. Defendant states it should therefore have been allowed to introduce evidence of the prior fires to prove plaintiff's fraudulent intent.

In considering this contention, we must take note of how the issue arose at trial. During cross-examination, defendant's attorney asked plaintiff about earlier fires on property she owned, and about a fire on property a brother of hers owned. Plaintiff's attorney objected, stating the inquiries were irrelevant to any issue in the lawsuit.

In arguing the inquiries were relevant, defendant's attorney stated he would present evidence that the fire in issue was an incendiary fire. He added, "Should we fail to prove incendiary origin, that testimony and evidence should be properly stricken by the Court, but on the representation that we will tie up this line of examination, this line of questioning, to the incendiary origin of the loss of August 26, 1975, I ask the Court to permit me to do that."

The trial court allowed defendant's attorney to ask plaintiff about the fire in 1955 or 1956 on the same tract where the fire in issue occurred, but otherwise sustained the objections of plaintiff's attorney.

Except for the 1955–56 fire and a fire in the spring of 1975 on property owned by one of plaintiff's brothers, the record before us discloses no information about any of the earlier fires. Defendant made no offer of proof as to dates, locations, insurance claims, amounts of loss, owners involved or other details. Moreover, after plaintiff rested her case, defendant presented no evidence. Thus, there was no proof that the fire in issue was of incendiary origin. Consequently, the basis on which defendant's attorney argued to the trial court that the inquiries were relevant was never established.

With the record in this posture, we cannot convict the trial court of error in sustaining the objections of plaintiff's attorney. The theory of admissibility defendant argues now is not the argument its attorney made to the trial court when the issue arose there. Defendant's attorney, at that time, conceded evidence of the earlier fires was admissible only if there were proof that the fire in issue was of incendiary origin. He did not tender the theory that evidence of the earlier fires was independently admissible to prove a course of fraudulent conduct and a motive for plaintiff's alleged fraudulent conduct in the instant case. His position at trial was that absent proof that the instant fire was deliberately set, evidence of the earlier fires was inadmissible.

But for certain exceptions not pertinent here, no allegation of error shall be considered on appeal unless it was presented to and decided by the trial court. *Villaume v. Villaume,* 564 S.W.2d 290, 297[3] (Mo.App.1978); *State ex rel. State Highway Commission v. Govero,* 533 S.W.2d 639[1] (Mo.App.1976). Inasmuch as the theory of admissibility defendant relies on now was never presented to and decided by the trial court, we cannot consider it here. Furthermore, as no offer of proof was made

regarding the earlier fires, there is nothing before us to rule upon in that regard. *Elliott v. Richter,* 496 S.W.2d 860, 864[1] (Mo. 1973). Defendant's point 1 is denied.

Defendant says in point 2 that the trial court erred in excluding evidence that (a) plaintiff made "false claims" for personalty allegedly lost in the instant fire, and (b) plaintiff knew the day before that fire that she would be living at a different address than the dwelling that burned. Defendant argues this evidence would have established fraud on plaintiff's part, sufficient to bar reformation.

■ With regard to the first item in point 2, the transcript shows that on cross-examination, defendant's attorney established that plaintiff listed three television sets on her proof of loss. At that point, the trial court sustained plaintiff's attorney's objection that the inquiry was neither material nor relevant. Defendant made no offer of proof, thus the record before us fails to demonstrate that the line of inquiry, had defendant been allowed to pursue it, would have produced evidence that the claim was false, or any other admissible evidence. An objection to the exclusion of testimony cannot be considered on appeal absent a showing of what the testimony would have been and that it was relevant and material; mere refusal to allow a witness to testify is not reversible error in the absence of a showing of what the answer would have been. *Moore v. Parks,* 458 S.W.2d 344, 348[6] (Mo.1970). The first assignment of error in point 2 is without merit.

As to the second part of point 2, defendant's attorney established on cross-examination of plaintiff that she ordered eyeglasses the day before the subject fire. Defendant's attorney then asked plaintiff whether she told the optical company to mail the glasses to her at Arvis' address, rather than to the dwelling in dispute. Plaintiff's attorney objected that the answer would be neither material nor relevant because the incident occurred two and a half months after the policy was issued.

Defendant's attorney told the trial court that plaintiff's answer would show that she knew the day before the fire that she would not be living in the subject dwelling when the glasses were mailed.

The trial court sustained the objection.

Defendant argues here that plaintiff's answer would have tended to "establish the fraudulent purpose for which plaintiff initially procured the policy of insurance." We assume defendant means the answer would have established that plaintiff knew on August 25, 1975, that the dwelling would soon burn, and that this, in turn, establishes that plaintiff intended to defraud defendant when she applied for the policy on June 12, 1975.

Assuming plaintiff would have given the answer defendant expected, it is arguable that a directive to the optical company to mail the glasses to Arvis' address would support an inference that on August 25, 1975, plaintiff expected the dwelling to soon burn. Obviously, other inferences are also arguable. However, even if one infers that plaintiff, on August 25, 1975, expected the dwelling to burn, it does not follow that she had fraudulent intent two and a half months earlier when she bought the policy. Any such argument stacks an inference on an inference.

■ Evidence must have a logical relevancy and probative value; admission of questionable evidence is within the discretion of the trial court. *Cardello v. Bauer,* 433 S.W.2d 81, 82[3, 4] (Mo.App. 1968). The trial court's determination whether proffered evidence is relevant will be upheld on appeal absent showing of abuse of discretion. *City of Cape Girardeau v. Robertson,* 615 S.W.2d 526, 531[8] (Mo. App.1981).

■ These rules apply here. Given the tenuous nature of the double inference defendant argues for, we cannot say the trial court abused its discretion in sustaining plaintiff's objection. Defendant's point 2 is denied.

Points 3 and 4 are related, and require us to consider a provision of the policy which,

for convenience, we refer to hereafter as "the fraud clause." It provides that the policy shall be void if "the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein. . . ."

Defendant contends in point 4 that the trial court erred in granting reformation because the policy was "voided" by the fraud clause, in that plaintiff fraudulently misrepresented or concealed her ownership interest in the property, and such misrepresentation was material. More precisely, defendant complains that plaintiff told Henderson the property was in her name and her husband had no interest in it.

In evaluating point 4, we first observe that defendant overreaches in characterizing plaintiff's statements to Henderson as fraudulent. We have earlier accepted the trial court's finding that the evidence failed to establish that plaintiff willfully misrepresented her ownership interest to Henderson with the intent to defraud defendant. The trial court did, however, find that plaintiff told Henderson the property was in her name and her husband had no interest in it. This finding is likewise binding on us, as it is supported by substantial evidence, and is not against the weight of the evidence. *Murphy v. Carron,* supra, 536 S.W.2d at 32[1]; *Norcomo Corporation v. Franchi Construction Co., Inc.,* supra, 587 S.W.2d at 317[3].

It thus appears we must decide whether plaintiff's statements to Henderson about ownership of the property, even though unaccompanied by fraudulent intent, render the policy void under the fraud clause. In that regard, the trial court reached this conclusion:

"That even though the real estate upon which the dwelling that burned was titled by the entireties between Arvis Moreland and plaintiff, she (plaintiff) had an insurable interest particularly since inquiry was made by plaintiff's[8] agent into the marital status of plaintiff, and thereafter accepted the premium without making any further investigation. Under this factual situation this court concludes that defendant is estopped from denying[9] a forfeiture."

Defendant argues, in point 3, that the trial court's conclusion is erroneous because an insurer has no duty to make an independent investigation into misrepresentations by its insured, and is legally entitled to accept such representations as true.

We are mindful that where answers in an application for insurance are complete on their face, the insurer is not obliged to make further inquiry, and absent knowledge of the true facts is not estopped to avoid the policy. *Weekly v. Missouri Property Insurance Placement Facility,* 538 S.W.2d 375, 379[9] (Mo.App.1976).

However, in *Fulbright v. Phoenix Ins. Co. of Hartford, Conn.,* 329 Mo. 207, 44 S.W.2d 115 (1931), the Supreme Court held the evidence made a submissible case on the issue whether the insurer was estopped to declare a fire insurance policy void under a clause requiring the insured to be the unconditional and sole owner of the property. There, the insured owned the property with his wife as tenants by the entirety, but the policy was issued in his name alone. The insurance agent had known the insured many years, and was aware that practically everything the insured and his wife owned was titled jointly. The agent testified he assumed the property in issue was so held, even though he did not actually know. The Supreme Court ruled that if the agent knew how title was held, the insurer could not escape liability under the sole ownership clause. 44 S.W.2d at 120.

In *Fox v. Connecticut Fire Ins. Co. of Hartford,* 268 S.W. 393 (Mo.App.1925), a fire insurance policy contained a provision virtually identical with the fraud clause in the instant policy. The policy in *Fox* named the insured as owner of the property, but he had only a leasehold interest.

---

8. We assume the trial court intended to say "defendant's" instead of "plaintiff's".

9. We assume the trial court intended to say "declaring" instead of "denying."

There was evidence, however, that the insurance agents who collected the premium knew the insured did not own the property. The Court of Appeals held the trial court properly submitted the question of waiver and estoppel to the jury.

In the instant case, the check plaintiff gave Henderson for the premium was signed "Arvis Moreland By Inas Moreland." Plaintiff testified she told Henderson that she and Arvis were separated but not divorced. Henderson admitted plaintiff said "something" about her separation and divorce. Additionally, plaintiff testified she told Henderson her husband had cancelled the prior insurance on the property.

■ Bearing in mind that (a) tenancy by entireties is a common way for spouses to hold title to real estate, (b) the check for the premium bore the names of both plaintiff and Arvis, (c) Henderson, on June 12, 1975, knew plaintiff then had, or formerly had, a husband, and (d) plaintiff testified she told Henderson her husband had cancelled earlier insurance on the property, we believe the evidence made a submissible issue as to whether defendant was estopped from declaring the policy void under the fraud clause. The trial court, as the trier of fact, decided that issue in favor of plaintiff and against defendant.

■ Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is against the weight of the evidence with caution and with a firm belief that the decree or judgment is wrong. *Trenton Trust Co. v. Western Surety Co.*, 599 S.W.2d 481, 483[2] (Mo. banc 1980). Conflicts in the evidence were for the trial court to resolve, and the facts must be taken in accordance with the results reached by the trial court. *Id.* at 483[3]. Given the deference which we must accord the trial court's findings, we cannot say the trial court erred in ruling that defendant was estopped from declaring the policy void. Defendant's points 3 and 4 are denied.

Defendant's final point (number 7) is a reprise of the fraud, misrepresentation and unclean hands arguments made in earlier points. Those arguments have been considered and ruled adversely to defendant. Point 7 is, accordingly, denied.

Having rejected all assignments of error by defendant regarding Count I, we hold that the portion of the judgment adjudicating Count I should be affirmed.

\* \* \*

Plaintiff's appeal (number 12946)

As to Count II, defendant's position in the trial court was that (a) the statements, depositions and earlier trial testimony of plaintiff and Henderson established that plaintiff fraudulently concealed and misrepresented her interest in the insured property when she applied for the policy, in that she told Henderson the property was in her name and that her husband had no interest in it, (b) the misrepresentation was material to the risk as a matter of law, (c) the fraud clause voids the policy if the insured willfully conceals or misrepresents any material fact or circumstance concerning the insurance, or the interest of the insured in the property, and (d) defendant would not have issued the policy insuring the property to its full market value had it known of Arvis' interest.

The trial court's order granting defendant's motion for summary judgment stated that the facts necessary to a determination of Count II in favor of defendant had been shown by unassailable proof, that there was no genuine issue as to any material fact, and that defendant was entitled to judgment as a matter of law.

In considering plaintiff's appeal from that ruling, we note that in affirming the portion of the judgment pertaining to Count I, we upheld the trial court's determination that defendant was estopped from declaring the policy void under the fraud clause. That identical issue—and no other—was presented by defendant's motion for summary judgment on Count II.

■ It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially deter-

**568**

mined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties or their privies, regardless of the form the issue may take in the subsequent action, whether the subsequent action involves the same or a different form of proceeding, or whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action. *Jackson v. Hartford Accident and Indemnity Company*, 484 S.W.2d 315, 321[1] (Mo. 1972).

Here, defendant pleaded the fraud clause as a defense to the reformation plaintiff sought in Count I. The trial court considered that defense, and ruled adversely to defendant.

In its appeal from that adjudication, defendant, by points 3 and 4, attacked the trial court's rulings regarding the fraud clause. We considered defendant's arguments and rejected them.

The fact that the relief sought by plaintiff in Count II (money damages) is different than the relief sought in Count I (reformation) should not afford defendant a second opportunity to void the policy by means of the fraud clause. The rule of res judicata operates to prevent a party or privy to relitigate facts or questions in issue in a former action between the same parties which has been settled by a judgment on the merits, whatever form the issue may take in the subsequent action, or whether upon the same or different cause of action, claim, demand, ground or theory. *Stadium Bank v. Milton*, 589 S.W.2d 338, 342[2] (Mo. App.1979).

We recognize that the instant case differs in one respect from *Jackson* and *Stadium Bank*. In each of those cases, the former action was a separate lawsuit from the subsequent action. Here, Count I and Count II were joined in the same petition.

We fail to see, however, why that should prevent application of the rule of res judicata. The issue whether the policy was rendered void by the fraud clause in the circumstances of this case was litigated and decided in the trial of Count I. Inasmuch as we have affirmed that portion of the judgment adjudicating Count I, we hold that the issue is res judicata, and that defendant cannot, as a defense to Count II of plaintiff's petition, assert the policy is void under the fraud clause. Consequently, defendant is not entitled to summary judgment on Count II under the theory presented to the trial court.

\* \* \*

That portion of the judgment adjudicating Count I of plaintiff's petition is affirmed; that portion of the judgment adjudicating Count II of plaintiff's petition is reversed and the cause is remanded to the trial court for further proceedings as to Count II only.

GREENE, C.J., and TITUS, J., concur.

FLANIGAN, P.J., concurs in result.