Jerry R. WARNER, d/b/a Sportsman's Corner, Appellee,

v.

TRANSAMERICA INSURANCE COMPANY, Appellant.

Jerry R. WARNER, d/b/a Sportsman's Corner, Appellee,

v.

TRANSAMERICA INSURANCE COMPANY, Appellant.

Jerry R. WARNER, d/b/a Sportsman's Corner, Appellant,

v.

TRANSAMERICA INSURANCE COMPANY, Appellee.

Nos. 83–1974, 83–2202 and 83–2054.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1984.

Decided July 25, 1984.

1348

James W. Newberry, Schroff, Glass & Newberry, P.C., Springfield, Mo., for appellee.

Russell F. Watters, Brown, James & Rabbitt, P.C., St. Louis, Mo., for appellant.

Before BRIGHT, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

HENLEY, Senior Circuit Judge.

Jerry R. Warner's business burned and he brought suit to collect the proceeds of an insurance policy issued by Transamerica Insurance Company. Transamerica denied coverage alleging that Warner had set the fire, and after trial a jury returned a verdict in favor of Warner. The district court[1] denied Transamerica's motions for a new trial and for relief from judgment and entered judgment on the verdict. Transamerica appeals from both rulings contending that the district court erred in excluding certain evidence and that the court denied it a fair trial by improperly commenting on evidence and questioning witnesses. Finally, Transamerica seeks a new trial on the basis of newly discovered evidence and juror misconduct. We reject appellant's contentions and affirm.

Jerry Warner operated a business called Sportsman's Corner in St. Roberts, Missouri in which he sold sporting goods and liquor. The business burned in the early morning hours of January 25, 1982. Warner submitted proof of loss of $266,200.00 for inventory, contents and furnishings but Transamerica denied the claim based on fraud.

At trial, Transamerica submitted undisputed evidence that arson was the cause of the fire.[2] Warner denied any involvement, however, and thus the main issue at trial was whether or not Warner participated in the arson.

Warner testified that he had been at his business on the day of the fire and noticed some pistols and approximately twenty cases of beer missing. However, he did not relate this information to the Fire Marshal who investigated the fire, although he did report the alleged break-in to the police three days after the fire.

Transamerica showed that Warner had increased the insurance coverage on Sportsman's Corner from $154,000.00 to $194,000.00 approximately two to three months prior to the fire.[3] However, Transamerica's agent admitted that he strongly urged Warner to increase his coverage in view of the increased size of his inventory. Transamerica also attempted to show that

---

1. The Honorable William R. Collinson, United States Senior District Judge, Western District of Missouri.

2. In fact, Warner stipulated that the business fire was of incendiary origin.

3. The coverage on furniture and fixtures was increased from $4,000.00 to $24,000.00. Inventory coverage was increased from $150,000.00 to $170,000.00.

Warner had a motive for arson because falling gross sales, rising inventory reports, and a previous attempt to sell the business indicated that the business was in financial trouble. Warner showed, however, that even though sales were down for 1981, net income was up and all loans were current. It also appears that Warner had excellent credit with the two banks that were financing him.

Warner produced evidence that pointed to others with possible motives for committing arson. Specifically, he produced proof that he had experienced prior burglaries at Sportsman's, that he was enemies with both his wife's former husband and former boyfriend, that he had experienced a prior tire-slashing incident, and that a boat and motor had been stolen in the past.

After the jury returned its verdict, the district court entered judgment in favor of Warner in the amount of $281,768.36. Transamerica's motion for a new trial was denied. The court stated that Transamerica had wholly failed to prove that Warner had either the motive or opportunity for starting the fire and that the claimed errors in the proceedings did not justify a new trial. Transamerica then filed a motion for relief from judgment pursuant to Fed.R.Civ.P. 60(b). The district court also denied this motion.

Transamerica's first point of error concerns the admissibility of evidence of a prior house fire which occurred at Warner's residence. The district court sustained Warner's motion in limine to preclude Transamerica from mentioning that Warner's house had burned fifteen days before his business burned. Transamerica contends that the house fire was relevant because some of Warner's business loans were secured in part by his residence, the evidence that Warner's business was in

financial trouble, both fires were initially claimed to be caused by furnace malfunction, and because Warner had recently increased the insurance coverage on his business. Transamerica asserts that the evidence was thus admissible under FRE 404(b)[4] as probative of motive, intent, opportunity, or absence of mistake or accident.

The district court ruled that the evidence's slight probative value was "far outweighed by the possible prejudicial effect of the testimony." The court based this ruling primarily on the fact that there was no evidence to suggest that the prior fire was of incendiary origin, much less that Warner had anything to do with starting it. The court found that since Warner had not submitted a proof of loss for the house fire by the time of the business fire, no scheme of or familiarity with making fire insurance recoveries could have been indicated.

We may only reverse a trial court's determination of the admissibility of evidence where there has been a clear abuse of discretion. *See Austin v. Loftsgaarden,* 675 F.2d 168, 180 (8th Cir.1982); *Hammann v. Hartford Accident & Indemnity Co.,* 620 F.2d 588, 589 (6th Cir. 1980). No abuse of discretion has been shown here. In the only two cases we have found to be directly on point, evidence of a prior fire was not deemed to be relevant unless it was proved that the insured actually participated in the prior arson (or at least a showing that the fire was of incendiary origin) or that the evidence was probative of the insured's familiarity with insurance claims and recovery. *See Garcia v. Aetna Casualty & Surety Co.,* 657 F.2d 652, 655 (5th Cir.1981); *Smith v. State Farm Fire & Casualty Co.,* 633 F.2d 401, 402–04 (5th Cir.1980). *See generally* Annot., 64 ALR Fed. 648 (1983).[5] As the

---

4. Rule 404(b) provides:
   Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, plan, knowledge, identity, or absence of mistake or accident.

5. These same requirements have also generally been applied in criminal trials for arson. Before evidence of a prior fire can be admitted in a defendant's arson trial, it must be shown that he was connected with the other fire and that it was of incendiary origin. *See* Annot., 87 ALR2d 891, 894 (1963).

district court found, Transamerica has not shown any of these conditions here. It appears that the district court considered the relevant factors and carefully balanced the probative value of the evidence with its potential for prejudice, which was substantial. The district court was well within its discretion in excluding the evidence of the prior fire.[6]

Transamerica next contends that the trial court's conduct, remarks, and questions were so biased that it did not receive a fair trial. Warner, on the other hand, asserts that the district court's questions and comments were merely an attempt to clarify evidence and that it is the trial court's right and duty to see that a witness's testimony is not misunderstood.

■ A trial judge should never assume the role of advocate, *e.g., United States v. Gunter*, 631 F.2d 583, 587 (8th Cir.1980), and must preserve an attitude of impartiality in the conduct of a trial. *E.g., United States v. Woods*, 696 F.2d 566, 571 (8th Cir.1982); *United States v. Gavic*, 520 F.2d 1346, 1354 (8th Cir.1975). It is also true, however, that a trial judge may question witnesses or comment on the evidence. A federal judge is more than a "mere moderator" or umpire in the proceedings and he may take an active role in conducting the trial and developing the evidence. *See Geders v. United States*, 425 U.S. 80, 86–87, 96 S.Ct. 1330, 1334–1335, 47 L.Ed.2d 592 (1976); *United States v. Nobles*, 422 U.S. 225, 230, 95 S.Ct. 2160, 2166, 45 L.Ed.2d 141 (1975); *United States v. Allsup*, 566 F.2d 68, 72 (9th Cir.1977); *Nordmann v. National Hotel Co.*, 425 F.2d 1103, 1109 (5th Cir.1970); *Dranow v. United States*, 307 F.2d 545, 572 (8th Cir.1962). In order to reverse on grounds of excessive judicial intervention, the record must either "disclose actual bias on the part of the trial judge [or] leave the reviewing court with an abiding impression that the judge's remarks and questioning of witnesses projected to the jury an appearance of advocacy or partiality." *United States v. Singer*, 687 F.2d 1135, 1141 n. 10 (8th Cir. 1982), *rev'd on rehearing*, 710 F.2d 431 (8th Cir.1983).

■ While Transamerica alleges that it was interrupted numerous times during trial by questions and comments from the bench, only two episodes are advanced in its brief, both of which involve the testimony of State Fire Marshal Ralph Lindsay. In the first, Lindsay testified that the owner of a business or home is always "the prime suspect" in a criminal arson investigation. The district court inquired what investigation his department had made to establish Warner as the chief suspect. The judge then related to the jury his own experience with filing an insurance claim with regard to a house fire.

Initially, we believe that the judge's questions were permissible since they were designed to clarify the basis for the witness's broad statement. Moreover, the court's mention of his own fire by way of illustration does not appear to have prejudiced Transamerica. While such comments frequently are unnecessary and should be approached with caution, the court here clearly informed the jury of the purpose of his questions and, in response to Transamerica's objection, told the jury that he

---

**6.** Transamerica contends that *Moreland v. State Farm Fire & Casualty Co.*, 662 S.W.2d 556 (Mo. App.1983), requires us to hold the evidence admissible. First, even though questions such as burden of proof, presumptions, and privileges may be matters of state law, *see Blackledge v. Martin K. Eby Const. Co.*, 542 F.2d 474, 476 n. 1 (8th Cir.1976); *Lynch v. Travelers Indemnity Co.*, 452 F.2d 1065, 1068 n. 2 (8th Cir.1972); FRE 601, 501, 302, in general, issues of admissibility of evidence in diversity cases are questions of federal law. *See, e.g., In re Air Crash Disaster Near Chicago, Ill.*, 701 F.2d 1189, 1193–95 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983); *Grenada Steel Industries v. Alabama Oxygen Co.*, 695 F.2d 883, 885 (5th Cir.1983); 19 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4512 (1982); FRE 1101(b). Second, *Moreland* did not decide the issue since the defendant there did not properly preserve the record. *Moreland*, 662 S.W.2d at 564–65. Finally, and perhaps most importantly, as we read *Moreland,* the Missouri Court of Appeals appears to imply that, in order to be admissible, the prior fires must be shown to be of incendiary origin. *See id.* Transamerica's contention is therefore without merit.

was well-treated by his insurer and did not intend to create any impression to the contrary.

The second incident alleged to require reversal concerns the court's inquiry of Lindsay about whether gasoline vapors are heavier or lighter than air. In the course of doing so, the court mentioned testimony given by another member of the State Fire Marshal's office in an earlier trial. Again, we do not see how these questions and remarks prejudiced Transamerica. Lindsay's answers corroborated the former Fire Marshal's testimony and corrected a statement made earlier in the trial by another witness. The questions were merely the court's attempt to avoid misunderstanding and to clarify a scientific fact. This was proper. The court's mention of the testimony in the other trial does not appear to have favored either side.

Transamerica's other allegations of judicial impropriety are vague and conclusory. Nevertheless, we have carefully examined the entire record with these claims of error in mind. Our review reveals that there is simply no evidence that the district court became an advocate in this trial, nor is there any evidence that Transamerica was prejudiced by the limited number of questions and comments the court did make. Transamerica's contentions in this regard are wholly without merit.

Transamerica contends that the district court erred by not granting it relief from judgment pursuant to Fed.R.Civ.P. 60(b).[7] At the post-trial hearing held in response to Transamerica's motion, Transamerica asserted basically two grounds for relief: juror misconduct and newly discovered evidence. The alleged juror misconduct consisted of the fact that juror Elias apparently had some type of indirect antecedent business relationship with Warner while

Warner was vice president of the St. Roberts Bank, and that the juror did not disclose this relationship in voir dire. The newly discovered evidence was testimony by Warner's wife concerning certain statements Warner had made to her.

Rule 60(b) "provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." *Kansas City Bricklayers Employees Pension Fund v. Kelly Waterproofing, Inc.*, 646 F.2d 338, 339 (8th Cir. 1981) (quoting *Clark v. Burkle*, 570 F.2d 824, 830 (8th Cir.1978)); *see also Horace v. St. Louis Southwestern R.R. Co.*, 489 F.2d 632, 633 (8th Cir.1974). Because the trial court had the opportunity to assess the evidence firsthand, we may only reverse a denial of a Rule 60(b) motion where there has been a clear abuse of discretion. *Jensen v. Klecker*, 702 F.2d 131, 132 (8th Cir. 1983); *Kansas City Area Transportation Authority v. Missouri*, 640 F.2d 173, 175 (8th Cir.1981).

Considering first the alleged juror misconduct, it was brought out at trial that Warner had previously been an officer at the St. Roberts Bank. While in that capacity, he made loans to a business called Bobby's Supermarket. Juror Elias testified at the post-trial hearing that his brother owned Bobby's Supermarket and that Elias himself had worked there for a time. However, Elias also testified that he had never had any direct dealings with either the bank or with Warner personally since his brother did almost all of the banking business. Warner's wife testified that during the trial Warner told her that he recognized Elias and that he had made loans to the juror's brother. Juror Elias further testified that Warner's aunt had ap-

---

7. Rule 60(b) provides in part:
   On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

proached him at a recess during trial and asked about his relatives.[8] He also testified, however, that at the time he did not know who she was and was unaware that she was related to Warner.

We do not believe that these facts constitute the type of exceptional circumstances contemplated by Rule 60(b). The most that was established was that Warner might have been in contact with juror Elias regarding the juror's brother's business some fifteen years previously.[9] In fact, the juror specifically testified that he did not know Warner and could remember no past dealings with either Warner or the bank. Warner also testified that he could remember no specific dealings with juror Elias or his brother but that he did realize after the trial began that juror Elias was the brother of a past business acquaintance. As for the exchange between the juror and Warner's aunt, the juror testified that he did not know who she was at the time and that their conversation was short and in no way related to the trial.[10] Finally, juror Elias stated that neither the prior relationship nor the conversation influenced him in any way in coming to his decision. From a vague, uncertain, and indirect fifteen year old business relationship and a short casual conversation we are asked to grant relief from judgment. We decline to do so. Juror Elias's silence to voir dire questions was not a failure to disclose pertinent information and no improper influence has been shown.

Turning to Mrs. Warner's other post-trial testimony, she stated that Warner had told her that he would not cooperate in their upcoming divorce proceedings[11] unless she cooperated with him in the insurance trial. She further testified that she discovered the house fire some forty-five minutes af-

ter Warner had gone into the basement to put wood on the fire, and that when she smelled smoke she went to the basement and saw the fire burning in the ceiling by the stovepipe. She noticed no unusual activities by Warner prior to either fire and in fact stated that she did not believe Warner had started the residence fire. Finally, Mrs. Warner testified that Warner had told her after the house fire not to be surprised if something happened to his business because he had heard that the store next door was in financial trouble and "that something might happen to it."

■ In order to justify Rule 60(b) relief based on newly discovered evidence, it must be shown: (1) that the evidence was actually "newly discovered"; that is, it must have been discovered subsequent to the trial; (2) that the movant exercised due diligence; and (3) that the evidence is material, not merely impeaching or cumulative, and that a new trial would probably produce a different result. *See United States v. Walus,* 616 F.2d 283, 287–88 (7th Cir. 1980); *Ag Pro, Inc. v. Sakraida,* 512 F.2d 141, 143 (5th Cir.1975), *rev'd on other grounds,* 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976); 11 Wright & Miller, *Federal Practice and Procedure: Civil* § 2859 (1973).

■ We do not believe that Transamerica has satisfied the above requirements. First, there is some question as to whether Transamerica was diligent in attempting to discover the evidence. It did not depose Mrs. Warner and conducted only a cursory examination of her at trial. Moreover, her testimony can best be described as impeaching. She gave no direct indication that Warner was responsible for either the business or residence fire. In fact, she

---

**8.** This conversation had earlier been the subject of a motion for a mistrial. The district court immediately voir dired Warner's aunt out of the jury's presence, and after hearing the arguments of the parties determined that no prejudice had resulted to Transamerica and denied the motion. Transamerica has not appealed from this ruling.

**9.** The activity in question occurred sometime between 1964 and 1969.

**10.** In fact, juror Elias testified that, even at the time of the post-trial hearing, he did not know who Warner's aunt was. Further, he stated that the conversation was nothing more than an exchange of greetings as the two passed each other in the hall.

**11.** It appears that Mr. and Mrs. Warner were separated and in the process of going through a divorce at the time of the insurance trial.

specifically stated that she did not believe Warner started the house fire and noticed no unusual activities by Warner prior to either fire. The "threat" directed at Mrs. Warner to cooperate appears to be nothing more than a retaliatory remark made during an emotional moment of a domestic quarrel. No specific action was threatened if she did not cooperate and the extent of cooperation was not defined. More importantly, there was no indication that Mrs. Warner gave perjured testimony or suppressed evidence in response to the alleged threat. The statements about Warner's concern for his business because the store next door was in trouble are certainly not so inculpatory as to provide conclusive evidence that Warner participated in burning his business. Placed in perspective, along with the evidence which tended to exculpate Warner, such as the evidence indicating his lack of motive or opportunity, Mrs. Warner's testimony does not convince us that a new trial would produce a different result.

Since all the issues were fairly tried and submitted to the jury, and since we find no abuse of discretion in the district court's denial of Transamerica's motion, *see Kaufman v. Van Santen,* 696 F.2d 81, 83 (8th Cir.1983), the judgment of the district court is affirmed.